Toomer, Judge.
 

 The Plaintiff alleges, that he sued out a writ of
 
 capias ad respondendum,
 
 in an action of debt, from the County Court of Randolph, against one
 
 SJmbal Gardner,
 
 which came to the hands of the Defend
 
 *150
 
 ant, as Sheriff of Randolph, who neglected to execute the same, and made a false return thereon. This is an act¡on on q1G casej to recover damages. Tiie Plaintiff declares in two counts, first, for the neglect of duty, and secondly, for the false return. Tiie Defendant pleads not guilty. The validity of the writ is the question for the decision of this Court,* it is expressly averred in the declaration, and is the
 
 gravamen
 
 of the action.
 

 The S6th section of the constitution directs, that all writs shall run in the name of the State, and bear test, and be signed by the Clerks of tiie respective Courts.— The Defendant says, the paper purporting to be a writ was void, and gave him no authority to make the arrest therein required $ that it was neither
 
 signed,
 
 nor issued by the Clerk of Randolph County Court. A gentleman of the bar was introduced as a witness, on the trial below, who testified that tiie paper had been written, signed, and issued by him, in tiie name of the Clerk, but in his absence j that he had been practising as an attorney in the Court for twelve years, and on his admission to the bar, he and the other members thereof had been
 
 verbally
 
 authorized by the Clerk to write, sign and issue, in his name, writs of
 
 capias ad
 
 respondendum; and they, and each of them continued to exercise the authority, from that period to the time of giving testimony.
 

 The Clerk is selected, for his “ skill and probityhis appointment is made by the judicial officers of the Court, and is recorded on its minutes. He has the custody of the archives of the Court. He is, by virtue of his office, to issue writs, and by constitutional injunction must sign his name thereto. A writ of
 
 capias ad respondendum,
 
 by our Court law, forms a part of the record of the suit, which it is issued to commence. In our state, the issuing of the writ is the commencement of the action. The Writ of a Court of record, having a seal, is known by that seal, which is in the keeping of the Clerk, and is impressed by him. The affixing of the seal was a con
 
 *151
 
 stituent part of the writ, until tiie act of
 
 1797
 
 dispensed with its use, in process issued to the county in which the Clerk officially acts. Dispensing with the seal does not change, the character of the writ. It possesses the same dignity and solemnity now, as when clothed with that emblem of justice. It imparts the same power and authority to the officer to whom it is directed. It is equally beneficial to him who sues it out, and equally dangerous to the citizen against whom it issues. It commands the Sheriff to take, and safely keep him, who is named therein as
 
 the subject of
 
 the
 
 arrest.
 
 The loss of personal liberty, with all the privations and inconveniences incident to confinement iiqa public jail, may be the consequence of this exercise of authority.
 

 The seal of office, and the signature of the Clerk, are the testimonials by which the authenticity of writs is to be known. Remove these
 
 indicia
 
 of authenticity, arid you endanger the peace of society, and lessen the security of the citizen, by leaving him in doubt as to the genuineness and character of the instrument which commands his arrest
 
 \
 
 and you thus augment the responsibility and danger of the officer, to whom it is directed. By dispensing with the seal, as to process to be confined to the county in which it issues, the legislature have increased the necessity for a strict compliance with the constitutional requisition, that all writs should he signed by the Clerk of the Court from which they arc issued, whose writing may have a marked character, and whose signature may be generally known.
 

 By the act of
 
 1777, ch.
 
 115,
 
 sec.
 
 86, the Clerk of every Court may appoint a deputy,
 
 “
 
 who shall take the oath appointed for the qualification of public officers, and an oatli of office; and in case of the death of the Clerk of any Court in the vacation,
 
 his deputy
 
 shall hold the office of Clerk, until he or another shall be appointed agreeably to law.” It cannot be pretended, that the gentleman who signed and issued this writ, was the deputy
 
 *152
 
 whose appointment was sanctioned by this act. It does not appear, that he had taken either of the prescribed oaths, or that he liad undertaken the duties and respon-sibilitics of a deputy. He was one of a whole bar, who claimed and exercised equal authority. The case shows that he was claiming to act as an agent, and not assuming the character of the deputy authorized by law. The act of legislation contradicts the idea of any other agency in the discharge of these clerical duties, than that prescribed by law. So far as assistance, to the incumbent, or provision for his disability, was in the contemplation of the legislature, the selection of a competent deputy-will meet every emergency, and will supersede all necessity for any other agency. The legislative body thought that no man should he called to the exercise of these functions, without performing them under the obligation of solemn oaths. If the legislature did believe, that without this clause in the act of 1777, the clerical functions could be performed by agency, at the will of the incumbent, then they must be understood by irresistible implication, as restricting the agency to the deputy appointed, and
 
 qualified
 
 in the mode prescribed by law.
 

 The same act of the General Assembly, which provided for the appointment of Clerks, prescribed the mode of constituting deputies. But it is said, that (he signing and issuing of writs are ministerial duties, which the Clerk can perform by agency,* and that this Legislative enactment on the subject of deputies, was principally to authorize some agent to act, in the event of the Clerk’s death, in vacations, and was not intended to restrict the exercise of this common law right,
 
 nam qui facit per alium, facit per se.
 
 Let these positions be conceded, and it will then be necessary to inquire, whether the agent, on this occasion, had authority to sign and issue the writ. It is not sufficient
 
 to
 
 ascertain that the Cleric had power, and could delegate it. But did he so delegate it, as to authorize its exercise. If the paper be is
 
 *153
 
 sued without authority, if it be not a writ, the execution of it would make the Sheriff guilty of false imprisonment. The Plaintiff directing and participating in its execution, would be a trespasser ; and the party to be arrested could repel force by force, and resist the officer even unto death.
 

 For the ordinary purposes of business and commerce, authority verbally given is deemed sufficient. But the Clerk could not, as
 
 an individual,
 
 authorize an agent to transfer his freehold, or to bind him by deed, unless by an instrument of writing under seal, on account of the dignity and solemnity of the acts in legal contemplation. Power to bind the principal by deed, can only be given by deed ; authority should generally be. delegated by acts, commensurate in dignity and solemnity with the acts to be done. Recollect, that the document to be signed and issued would, except for the act of 1797, have the impress of an official seal, as well as the name of a public officer ; that it now has, from the signing, all the authority it had when bearing the seal j that it forms part of a record ; that it is the act of a Court of record, by its agent duly constituted, and that it is the command* of the law to a public officer to arrest a free citizen.— Should such power be given by an instrument of less dignity than a deed ? There should at least be some written evidence of the delegation of such authority.— The. repose of society, the security of the citizen, and the safety of the officer, require some written memorial of the transfer of such power. The authority in this case was verbally given to the agent, and he was not authorized to perform an isolated act. He was not directed by the Clerk to sign in his name a single writ. But the agent was one of several, or many persons, authorized to do acts, indefinite in number, and unlimited as to time.
 

 In England, when an original writ is sued out of the ordinary Court of Chancery, the
 
 capias,
 
 which is mere leading process, is gut into the hands of the Sheriff, and
 
 *154
 
 ]ie issu(;s hjs
 
 "warrant
 
 to the bailiff', who executes it_-There the Sheriff delegates his power by a written precept. In
 
 Dick
 
 v.
 
 Stoker,
 
 (1
 
 ante
 
 91,) it was held by this Court, that bail to authorize the arrest and surrender of their principal by an agent, must give him the authority
 
 u
 
 by writing at least.”
 

 It is said, tiie Defendant, as Sheriff, received and returned to Court the paper as a writ, and should not now be heard, as denying its validity. He was the officer of the law to execute process, not to issue it. He had no authority to make a writ. His recognition of it could not give a character to the document, which it did not not possess at the time of its issuing. His mistake could not cure any defect i:i the paper, nor was he es-topped from showing that the paper was a nullity. The decision of this Court, in the case of the
 
 Governor
 
 v.
 
 McRae, (
 
 3
 
 Hawks,
 
 226,) removes this objection. A paper purporting to be a writ of
 
 capias ad respondendum,
 
 was issued from the Superior Court of Craven, but
 
 without the seal
 
 of the Court, and was directed and came to the hands of
 
 McRae,
 
 as Sheriff of Cumberland, which he returned to Court with the endorsement “ too late to hand,” and signed in his official capacity. The action was brought against the administrators of
 
 McRae
 
 on his official bond ; and the. breaches assigned were, for neglect of duty in not executing said writ, and for making a false return. It appeared, that the paper came to the hands of the intestate in due time, and he could have executed it. But the Defendant contended, as it had no seal, it was not a writ, and the Sheriff had no authority to execute it. This was the opinion of the Court, and it was decided, that the intestate by bis recognition of the paper, could not make it a writ, nor were his representatives aud sureties estopped from showing that it was not a writ, and the Plaintiff was nonsuited. The signature of the Clerk, and the seal of the Court are two of the componeut parts of a writ. In the
 
 Governor
 
 v.
 
 the
 
 
 *155
 

 .Administrators of McRae,
 
 the seal was wanting; here it Is defective for the want of the signature of the Clerk.
 

 It is also said, that the. Clerk subsequently recognized, and adopted the act of the agent, by receiving the paper as a writ, and filing it among the records of the Court, The subsequent acquiescence of the Clerk in the act of the agent, could not give the document a character which it did not possess, when it was in the hands of the Sheriff. And if a new character could be thus imparted, it could not have a retrospective effect, so as to make, the officer liable for the non-execution of a paper, which was inoperative while in his hands. Had the Sheriff attempted to exercise power under the paper, and was in the act of making the arrest, when the authority was denied, and force met with force, and death ensued, could the grade of the homicide be affected by the subsequent assent, or refusal of the Clerk, to confirm the act of the agent in signing and issuing the paper ? Such a position cannot be assumed.
 

 It is supposed, a practice has prevailed in many counties of the State, which authorizes gentlemen of the bar to
 
 write
 
 and
 
 sign
 
 writs of
 
 capias ad respondendum,
 
 in
 
 the
 
 name of the Clerk, and then to issue
 
 them;
 
 and that declaring such paper so issued not to have the character of a writ, will be productive of serious inconvenience, and extensive mischief. It is believed such a practice has been confined to few counties, and is circumscribed in extent. But the more extended the error, the greater necessity for arresting its progress. Much inconvenience is not apprehended from the decision
 
 ;
 
 at least, no great public mischief. If a paper tints issued, be executed, and the Defendant appears and pleads in chief, he will thereby waive the objection. The Defendant may come into Court without process, and make himself party to a suit, he can by appearance dispense with process to. bring him in. If he submit to the arrest, and give bail, he can then plead in abatement to the writ, and the defect will be fa
 
 *156
 
 tal. But if he plead in chief, it will he a waiver of the defect, and be equivalent to an acknowledgment that he , , . _ , , ° , „ had been brought into Court by proper process.
 
 (Dudley v. Carmolt,
 
 1
 
 Murp.
 
 340.)
 

 Per Curiam. — Let the judgment below be reversed, and a new trial granted.