In 1852 the mill and the 10 acres of land were sold by order of the court of equity and bought by John S. Fogleman, at the price of $306, for which he gave his note with Henry Fogleman and others as sureties.
In 1854 the lot of 9 acres adjoining was sold by order of the court of equity, and bought by John S. Fogleman at the price of $95, for (567) which he gave his note with Henry Fogleman and others as sureties.
In 1857 judgment was taken in the name of the clerk and master on the note of $306, execution issued, the mill and 19 acres were sold, and bought by McRay at the price of $405. McRay did not pay the money, and the sheriff was forced to pay it, and was allowed by the plaintiff's attorney to have the execution renewed. Schoffner took the bid off McRay's hands, paid the sheriff, and took his deed in the usual form. It does not set forth, as required by statute, that the title was held as security for the purchase money. Schoffner took possession under the deed.
In 1859 a bill was filed by Henry Fogleman and his cosureties, against John S. Fogleman, alleging that said John having become insolvent, Henry had been forced to pay the purchase money, except $50 paid by John, praying that the mill and 10 acres be sold for his indemnity. On reference to the clerk and master, he reported that Henry had paid the sum of $377.94 as the surety of John; an order of sale was made, and William Hudson became the purchaser for $300, for which he gave his note with a surety.
Henry Fogleman also filed a bill in respect to the 9-acre tract, alleging that he had been forced to pay the purchase money, to wit, the $95, and assigned his equity to Patterson and Bason; whereupon it is ordered that the clerk and master execute title to them, which he did.
The plaintiff Schoffner asserts an equity under the sheriff's deed to pay off the encumbrances and have the legal title conveyed to him. In respect to the 9-acre tract, he submits to pay the $95, and asks for a conveyance from Patterson and Bason. In respect to the 10-acre tract, *Page 369 
including the mill, he insists that the amount paid by Henry Fogleman does not exceed the sum of $15 which he submits to pay, and asks for a conveyance by the clerk and master.
The defendants deny the equity of the plaintiff, on the ground (568) that the interest of John S. Fogleman was not subject to execution, and so he acquired nothing; but they aver that before the bill was filed they offered to release all claim to the land, provided Schoffner would pay the amount which Henry Fogleman had been obliged to pay as the surety of John S. Fogleman, which he refused to do.
The interest of a purchaser of land sold by a clerk and master, or other person, when the purchase money is not paid, and the title is retained as a security, is considered and treated as an "equity of redemption," the purchaser being in fact a mortgagor, in the same way as if the vendor had made title and then taken a mortgage to secure the purchase money. Green v.Crockett, 22 N.C. 390.
The purchaser of an "equity of redemption" at sheriff's sale has a right to call for the legal estate upon discharging such part of the mortgage debt as remains unpaid, by the provisions of the act of 1812. Rev. Code, ch. 45, sec. 546.
When the defendant in the execution has a trust or other equitable interest, which is not embraced by the act of 1812, a purchaser at sheriff's sale does not acquire the equity of the debtor, but is substituted to his rights "to the extent of holding it as a security for the money which he has paid." Taylor v. Gooch, 49 N.C. 486. I will remark for the purpose of correcting the error that the word "creditor" is put in the "headnote" of that case, and also in the opinion, as reported, in place of "debtor." The mistake is obvious from the context; for it is the debtor
who has the equity, to which the purchaser succeeds as a security for the money he pays. The creditor has only a judgment and execution, to which the debtor's equity is not liable, and the money paid is considered as so much advanced for the debtor on the security of his equity.
The difference between buying at sheriff's sale an equity which is the subject of execution, and one that is not, is this: in the former case the purchaser becomes the owner of the equity, and upon (569) discharging the encumbrances is entitled to the legal estate, although it may greatly exceed in value the amount which he has paid; whereas in the latter case the purchaser only succeeds to the equity of the debtor, to the extent of holding it as a security for the money paid: in other words, he becomes an encumbrancer merely, and the debtor still holds the equity, and upon discharging the encumbrance may call for the legal estate; and he is the person entitled to any excess which there may be in the value of the land over the encumbrances on it. *Page 370 
An "equity of redemption" cannot be sold under an execution for themortgage debt. The reason is obvious; for the purchase money would be applied in payment of the mortgage debt, and so the purchaser would get the legal estate, and in effect pay nothing for the equity of redemption, which is the very thing he professed to buy and the sheriff undertook to sell. For illustration: suppose a tract of land worth $2,000 to be under mortgage for $1,000. If the sheriff sells the "equity of redemption" under an execution for some other debt, and it is bid off at $1,000, the purchaser on paying the mortgage debt gets the land at its supposed value of $2,000; but if the sheriff was allowed to sell the "equity of redemption" under an execution for the mortgage debt, the $1,000 bid for it would extinguish the debt, and the purchaser could call for the legal estate without paying one cent more, and in fact get the land for $1,000 (half its value) and pay nothing for the equity of redemption. Camp v. Cox, 18 N.C. 52.
The sureties for the original purchase money have the first equity to be indemnified, and their claim is preferred to that of a purchaser of the equity of redemption at sheriff's sale, or any subsequent encumbrancer who comes in by assignment or otherwise; and the question of notice has no bearing in such cases, because neither party has the legal (570) estate, and the right turns on priority. Polk v. Gallant, 22 N.C. 395; Green v. Crockett, supra.
To apply these principles to our case: 1. In respect to the mill and 10 acres of land. The execution being for the mortgage debt, the "equity of redemption" was not subject to be sold under it; so McRay and his assignee, Schoffner, did not acquire the equity of redemption by the sheriff's deed; and Schoffner's equity was that of a subsequent encumbrancer, and John S. Fogleman still held the equity of redemption, and the right to have the land by discharging the encumbrances.
Schoffner, in order to enforce his equity, ought at once to have paid such part of the original purchase money as remained unpaid, and then filed a bill to have the land sold for his indemnity. Instead of doing so, he enters into possession and rests contented with the sheriff's deed until the sureties for the original purchase money file a bill, and the land is resold for their indemnity. Schoffner then comes forward and asks to be relieved from the effect of that deed, which was to purchase the mortgage, on the ground that he had not been made a party to the proceeding. We think he is entitled to relief to that extent, and there will be a decree for a sale of the land, the price to be brought in and subject to further directions.
2. In respect to the 9 acres of land. The equity of redemption was subject to sale under the execution; and if he had proceeded at once to pay off the $95 mortgage money, he could have called for the legal title, *Page 371 
but for a difficulty which will be mentioned below. He hangs back, however, until the surety, Henry Fogleman, assigns his equity to Patterson and Bason, and a deed is made to them by the order of the court, whereby the mortgage is foreclosed. The difficulty alluded to is that the 19 acres were sold together; so there is no mode of ascertaining what he paid for the equity of redemption; and to meet the justice of the (571) case, there will be a decree for the sale of this parcel also; the two parcels to be sold together or separately, as the commissioner may deem best, the whole fund to be subject to further directions. There will be a reference to ascertain the amount which has been paid by Henry Fogleman or any of the other sureties. This amount, with interest and the costs incurred in seeking indemnity (of which the master will also report), will be first paid out of the fund. Then the amount paid by Schoffner on the execution, allowing him interest and charging the rents and profits received by him. The residue, if any, will belong to John S. Fogleman or his assigns. The clerk will also report what amount was due on the note given by John S. Fogleman for the price of mill and 10 acres at the time of the sheriff's sale, and how much has been received by the clerk and master on account of this debt. The Court has had no little difficulty about it, for the clerk and master reported when the bill was filed for a resale that Henry Fogleman, as surety, had paid $377.94, and it seems from the plaintiff's admissions that John S. Fogleman had paid $50, and the sheriff says he paid to the attorney who had the note for collection $405, which greatly exceeds the price of both tracts of land, and needs explanation.
Let there be a decree for the sale of the land and an account, and the cause will be retained for further directions. Remanded.
NOTE. — A vendor who contracts to convey upon payment of the purchase money is, as between the parties, a mortgagee. Ellis v.Hussey, 66 N.C. 501; Derr v. Dellinger, 75 N.C. 300. The interest of one who holds land under bond for title, the price not having all been paid, is not subject to sale under execution. Ledbetter v. Anderson,62 N.C. 323. Neither is the vendor's interest liable to execution sale.Moore v. Byers, 65 N.C. 240; Blackmer v. Phillips, 67 N.C. 340;Fogler v. Bowles, 72 N.C. 603; Tally v. Reid, 72 N.C. 336;s. c., 74 N.C. 463. But when all the purchase money has been paid, the vendee's interest may be sold under execution. Phillips v. (572)Davis, 69 N.C. 117.
Where a debtor conveys property in trust to sell and pay certain creditors, the trustees hold in trust for the creditors, and then in trust for the debtor as a resulting trust. The resulting trust cannot be sold under execution as an equitable estate. After the debts are paid, the resulting trust is liable to sale under execution. But a mixed trust cannot be sold in that way. Sprinkle v. Martin, 66 N.C. 55.
Where one purchases land and takes a paper-writing intended by all the parties to be a deed, the seal being left off by inadvertence: Held, the *Page 372 
purchaser acquired no interest that is subject to execution. Hinsdale v.Thornton, 74 N.C. 167; s. c., 75 N.C. 381. Only such equitable interests as are authorized by the act of 1812 can be sold under execution.Mannix v. Ihrie, 76 N.C. 299. An equity of redemption cannot be sold under execution for the mortgage debt. Myrover v. French, 73 N.C. 609. Still a mortgagee may purchase the equity of redemption at an execution sale had at the instance of a stranger. Barnes v. Brown, 71 N.C. 507.
Cited: Rogers v. Holt, 62 N.C. 111.
Dist.: Myrover v. French, 73 N.C. 611.