264　　　Baker *et al. v.* The Bishop Hill Colony.　[Sept. T.,

Syllabus.　　Opinion of the Court.

## Jonathan H. Baker *et al.*

### *v.*

## The Bishop Hill Colony.

1. Contract —*forfeiture — waiver.* If time is of the essence, in a bond for a deed, the vendor may waive the forfeiture by continuing, and acting upon the contract.

2. If a party has no title to the land for which he gives a bond for a deed, he cannot declare a forfeiture until he is in a condition to convey, although time may be of the essence of the contract.

3. Mortgage — *what may be mortgaged.* The holder of a bond for a deed has an equity which he can mortgage or convey, and the mortgagee or grantee will succeed to all his equities.

4. Foreclosure — *rights of the owner of the equity of redemption.* Where a mortgage is executed on an equity, held by the mortgagor, on a bond for a deed, and the mortgagor subsequently reconveys the land to the vendor, before any forfeiture is declared on the bond, his grantor will succeed to the rights of the mortgagor, and is entitled to pay off the mortgage and prevent a sale; and until the equity of redemption has expired, he is entitled to retain the possession and enjoy the rents and profits.

Writ of Error to the Circuit Court of Henry county; the Hon. Ira O. Wilkinson, Judge, presiding.

The facts are stated in the opinion.

Mr. H. Bigelow, for the plaintiffs in error.

Messrs. Bennett & Vieder, for the defendant in error.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was a bill in chancery, filed in the Henry Circuit Court, by the Bishop Hill colony, against Jonathan H. Baker and others, to foreclose a mortgage executed by John I. Hall and wife to complainant, and a decree of foreclosure and sale of the mortgaged premises.

To reverse this decree, the defendants have brought the record to this court and assigned several errors.

The principal facts are found in the decree of the Circuit Court, and for convenience we here set it out in full as rendered at the October Term, 1866:

"And now, at this day, comes the complainant, by their solicitor, and the defendants, by their solicitors, and the cause coming on to be heard upon the original and supplemental bills and exhibits, the answers of defendants, John I. Hall, Jonathan H. Baker, David Lawson and David P. Wells, co-partners doing business under the style of J. H. Baker & Co., and of Truman Roberts, and the evidence taken and filed herein, and the agreement of counsel as to facts, and the court, having now heard the allegations, proofs and arguments of the said parties respectively, and being now advised in the premises, doth find: That in 1855 or 1856, defendant John I. Hall entered into possession of the quarter section, including the mortgaged premises; that while so in possession, and in December, 1856, said John I. Hall purchased a tax title to said quarter section of defendants, J. H. Baker & Co., for the sum of $1,000, paid the sum of $50 down, and took a bond for a quitclaim deed, and executed notes therefor for $950; one for $200, due in five months, one for $250, due in one year, one for $250, due in two years, and one for $250, due in three years, said notes bearing six per cent interest; that said bond for a deed was never recorded; that in March, 1857, defendant John I. Hall acquired the patent title to the east half of said quarter section, including the mortgaged premises; that on or about the 20th day of March, 1858, defendant John I. Hall and wife, Eliza Hall, being in possession thereof, executed to complainants a mortgage deed, to secure two promissory notes of said John I. Hall to complainants, dated March 9, 1858, one for the sum of $650.50, due in one year from date of said notes, and the other for the sum of $706.66, of the same date, due in two years from the date of said note, with interest respectively at the rate of ten per cent, upon sixty-seven and one-half acres on the north part of the east half of the north-east quarter of section number twenty-nine (29), township number

fourteen (14), north of the base line, and range number four (4), east of the fourth P. M.; that said mortgage was recorded in the recorder's office of Henry county, on the 31st day of March, 1858; that at and before the time of the taking of said mortgage deed, complainant examined the record of said mortgaged premises, found the title of record apparently in defendant John I. Hall, under a deed from J. M. Wiley, conveying the patent title thereto; and that complainant had no notice of the existence of the said bond for a deed from the said defendants, J. H. Baker & Co., to defendant John I. Hall; that when the first two notes executed under said bond for a deed had become due, suit was brought thereon, and judgment against said John I. Hall recovered and execution issued thereon; that on or about the 11th day of June, 1860, an agreement was entered into between the defendants J. H. Baker & Co. and John I. Hall, by which said Hall delivered up to said Baker & Co. the possession of the said east half of said quarter, and one Church was put in possession thereof as the tenant of said defendants J. H. Baker & Co.; that said Baker & Co. delivered up to said Hall his two notes on which no judgment had been rendered, and executed to him a receipt for the judgment upon the other two notes mentioned in the bond of said J. H. Baker & Co.; that said arrangement and agreement was made with full knowledge, by all the parties thereto, of the mortgage by the defendant Hall and wife to complainant, and of the rights of complainant under said mortgage; and that the said arrangement and agreement by said named defendants, was without any knowledge or consent of complainant; that since the said 11th day of June, 1860, the said defendants, J. H. Baker & Co., have been in possession of the said mortgaged premises, and enjoyed the rents and profits thereof for a portion of the time; that defendant David P. Wells died intestate on the 7th day of April, 1862, leaving a widow and three children, who are duly made parties to this cause by service of process herein, and the appointment and answer of a guardian *ad litem* for said children. Whereupon the court doth now further find and adjudge: that by the said

mortgage set forth in complainant's bill, the complainants acquired all the right, title and interest, legal and equitable, held and possessed by said defendant John I. Hall, at the time of the execution of said mortgage, and that by the subsequent arrangement made on the 11th day of June, 1860, between the defendants John I. Hall and J. H. Baker & Co., the latter took back the title and possession of said east half of said north-east quarter of section twenty-nine aforesaid, subject to the intervening rights which had accrued in favor of complainants, and that complainants are entitled to pay and discharge the indebtedness of defendant John I. Hall, to defendants J. H. Baker & Co., for the east half of said mentioned quarter section, remaining unconveyed by said defendants J. H. Baker & Co., or to have the same paid by a sale of the said east half of said quarter section, including said mortgaged premises, after allowing on said indebtedness against said defendant John I. Hall, the amounts with which they may be justly chargeable for rents and profits received by them, and the amount paid by J. M. Wiley ; and that, for the amount of said indebtedness that may so be and remain due and owing to said defendants J. H. Baker & Co., they have a prior claim upon the said premises ; and, inasmuch as it is uncertain as to what amount has been received by the defendants J. H. Baker & Co. since the year 1860, for rents and profits of said premises, — ·

It is, therefore, ordered by the court, that this cause be referred to the master in chancery of this court ; and that an accounting be had before said master ; and that said master in chancery report to this court : First, the amount due on the mortgage and notes in the bill mentioned, up to date of report ; second, the amount of the rents, issues and profits of said quarter section since 1860, with which defendants J. H. Baker & Co. may be chargeable ; third, the amount of taxes which J. H. Baker & Co. have paid, in pursuance of said bond, on said quarter section ; and fourth, the balance of indebtedness remaining due to defendants J. H. Baker & Co., by defendant John I. Hall, on said bond of J. H. Baker & Co. to defendant John I. Hall, both before and after the allowance of such sum

or sums as defendants J. H. Baker & Co. may be chargeable with ; and that the master report at or before the next term of this court."

At the March Term subsequent, the court, upon the coming in of the master's report, rendered a final decree in the cause as follows :

" And the court now being fully advised in the premises, and of the rights and equities of the parties, the court finds the right of the matter with the complainant.

" It is therefore ordered, adjudged and decreed by the court, that, within sixty days from the date of this decree, said defendant John I. Hall pay to the complainants the amount now due on said mortgage and notes, being the sum of twenty-five hundred and seventy-seven dollars and sixty cents ($2,577.-60) with interest at the rate of six per cent; and the costs herein to be taxed, and to said defendants Jonathan H. Baker, David Lawson, and the heirs and legal representatives of David P. Wells, deceased, the further sum of thirteen hundred and fifty-seven dollars and fifty-eight cents ($1,357.58) with interest thereon at six per cent from date; that in default of the payment of said sums, or either of them, by said defendant Hall, the master in chancery of this court, upon application of the complainant, shall proceed to sell said mortgaged premises, and all right and equity of redemption of the said J. H. Baker & Co., and all of the right, title and interest of each and every of said defendants served, other than said Baker, Lawson, and heirs of said Wells, deceased, therein at public sale, after duly advertising the same according to law, to the highest bidder for cash, subject to redemption ; that at or before said sale, said complainants pay, or cause to be paid, to the master in chancery, for the use of Jonathan H. Baker, David Lawson, and the heirs of David P. Wells, deceased, defendants herein served, the said sum of thirteen hundred and fifty-seven dollars and fifty-eight cents (1,357.58) and interest thereon at six per cent; and the same shall thereupon be in payment and discharge of the said indebtedness of said Hall to said J. H. Baker

& Co.; and the said complainants shall succeed to the rights of said Hall in the said mortgaged premises; and to conveyance from the said J. H. Baker & Co., in pursuance of said bond; and to bid at said master's sale the further sum of thirteen hundred and fifty-seven dollars and fifty-eight cents ($1,357.58) in addition to the amount due on said notes and mortgage; that the description of the mortgaged premises, in mortgage contained, be corrected, and made to conform to the intention of the parties executing the same; and that the same be, and hereby is, corrected so as to read 'sixty-seven and a half (67½) acres off of the north end of the east half of the north-east quarter of section number twenty-nine, in township fourteen, north of the base line and range number four, east of the 4th P. M., in the county of Henry, and State of Illinois'; that, upon such sale, the master in chancery shall make, execute and deliver, to the purchaser or purchasers at such sale, a certificate or certificates of purchase; and, upon the expiration of the time for redemption provided by law, that he make, execute and deliver, in pursuance of said certificate or certificates of purchase, his master's deed or deeds of the mortgaged premises so sold, conveying all right, title, interest and claim whatsoever, legal or equitable, of each and every of said defendants served, of, in or to the premises so sold; that, upon said sale being made, upon application of the purchaser or purchasers of said mortgaged premises, or any portion thereof, the purchasers, or their assigns, shall be entitled to possession of the said premises as against the defendants and every of them; and all persons claiming possession thereof under any of them arising since the pendency of this suit, and upon refusal to surrender such possession, the purchaser or purchasers of said mortgaged premises, or any portion thereof, or their assigns, may have a writ of possession to put such purchaser or purchasers, or their assigns, in possession of the said purchased premises; and in case of redemption, in pursuance of law, the reasonable rents and profits shall be accounted for by such purchaser or purchasers, his or their assigns, and allowed, in reduction of the

270    BAKER *et al. v.* THE BISHOP HILL COLONY.    [Sept. T.,

Opinion of the Court.

amount of redemption money, in favor of the party lawfully entitled to redeem.

"That, after expiration of time of redemption, said defendant J. H. Baker make, execute, and deliver, in case of non-redemption, his deed to said purchaser or purchasers; and, in case of redemption, then to said defendant John I. Hall, upon service upon him of a copy of this decree; and that, in default of so doing, said master convey by master's deed the said interest of said J. H. Baker at the time of the commencement of this suit, or acquired since the pendency thereof.

"That, out of the proceeds of said sale, said master in chancery pay, first, the costs and expenses herein to be taxed; second, the amount so decreed to be paid said Baker, Lawson, and the heirs of David P. Wells, deceased; and, third, the amount due the complainant on said mortgage; and pay the balance, if any, to said defendant Hall, and that he report to the next term of this court."

The errors assigned question the correctness of this decree, and the point is, how shall the equities of these parties be adjusted if not properly disposed of by the decree?

Counsel for plaintiffs in error contend that the plaintiffs in error were not proper parties to the bill, as their rights were superior to, and independent of, the rights of the defendant in error.

Was not one of the questions to be tried, whose was the superior equity?—and we are at a loss to perceive how that question could be finally determined without making them defendants in a cause where the rights of all the parties could be fully investigated.

Counsel also contend that, as the contract from Baker to convey to Hall was a contract of which time was the essence, and he not having shown himself ready, desirous and eager to perform it, his mortgagees, the appellees, can not insist upon an enforcement of it.

As a general rule, this is doubtless true; but it is competent for the vendor of land, when time is of the essence, to waive

the forfeiture and preserve the contract in force notwithstanding, and this the appellant, Baker, did by suing Hall upon the notes. But Baker himself was not in a position to declare a forfeiture, as he had no title until March 24, 1863, when he received the deed from Roberts of the "Aspinwall title."

As to the laches imputable to Hall and to his mortgagor, the appellee here, it is of no importance, inasmuch as Baker attempted to take no advantage of it until after the mortgage to appellees, and was not, as we have already said, in a position to take such advantage, not having acquired the title himself.

And, besides, this is not a bill for specific performance, but simply to foreclose a mortgage, in which proceeding it comes in collaterally, that appellants have certain rights to the estate mortgaged, and, in determining on the foreclosure, it becomes material to determine how those rights should be respectively adjusted, and of these rights appellees were ignorant when they took their mortgage, as Baker's bond had not been recorded.

From all that appears in the case, Hall, when he mortgaged the land to appellees, was in possession of it, claiming it as his own, against which, however, there was a tax title, known as the "Aspinwall title," for which Baker & Co. had a bond for a deed from Truman Roberts. While so in possession Hall bargained with Baker for this tax title on the terms set out in the title bond given by Baker to Hall, of which we have before spoken. By this contract, appellees' mortgagor, Hall, was to pay Baker $1,000, at times specified, Hall having paid fifty dollars in hand. Three of the notes becoming due and unpaid, judgments were obtained on them and collection sought to be enforced against Hall; and, he becoming insolvent, Baker attempted still to enforce his lien for the purchase money, at no time disaffirming the contract, but, on the contrary, he took a quitclaim deed from Hall, on the 11th of June, 1860, for the whole quarter section, the consideration of which was, that Baker was to cancel the judgments recovered against Hall, on his notes, surrender the note not sued on, and that he should surrender the premises to Baker, which was done, and he

remained in possession, as the proofs show and the decree finds, up to the time of the decree. There is some conflict of testimony about this deed, but we think the weight of evidence is, that such a deed was executed in compliance with an agreement to that effect between Hall and Baker and left with Baker's counsel, after which the several satisfactions of the judgments were entered and the note surrendered, and Baker went into possession.

The mortgage of appellees was executed on the 20th March, 1858, and duly recorded, and certainly conferred upon appellees all the rights legal and equitable which Hall then had in the premises, and of which the colony could not be divested by this arrangement between their mortgagor and Baker, to which they were not a party. Early in 1861 Baker sold and conveyed to J. M. Wiley the west half of the quarter section for $300, he remaining in possession of the entire east half, including the mortgaged premises.

Though it is not distinctly proved, there is ground for the inference, that Hall, when he mortgaged to appellees, claimed the land by a patent title, and was in possession under it, and when he sold to Wiley, in 1857, the west half, he took a deed from Wiley for the east half, and Wiley afterward took a quitclaim deed from Baker, claiming to hold the tax or Aspinwall title, but to which he had not the legal title until March 24, 1863. From this we infer Wiley owned the patent title under which Hall originally derived his title, and bargained with Baker for this tax title, with a view to perfecting his patent title.

From all the facts, as we understand them, no record having been made of the title bond to Hall from Baker, for " the Aspinwall title," we are constrained to believe when Hall executed the mortgage to appellees, they did not know of this arrangement for the tax title, although Hall states in his testimony they did. It is not probable Hall would have disclosed his weak title, for that would have had the effect to deter the defendants from taking the mortgage; the probabilities are, therefore, that the parties negotiated on the strength

of the patent title, then owned by Hall. But, be this as it may, Hall, under his bond from Baker, for this land, had an equity which he could mortgage, and did mortgage, for a valuable consideration, to appellees, by which appellees succeeded to all the equities of Hall.

For the reasons we have given that Baker could not declare a forfeiture, not being in a condition at the time to convey the title, and was seeking a recovery on the notes, for the same reasons the right to a specific performance on the part of Hall, was not lost by mere lapse of time. It may be said it was lost to Hall personally, by the agreement and settlement he made with Baker, but it was not lost to the appellees, whose rights had intervened so far as the right to enforce their mortgage is concerned — Hall could not prejudice that. Baker, however, having, by the arrangement and settlement with Hall, stepped into his shoes, he ought to have the right to prevent a sale of the premises by paying the mortgage of appellees; or, if not, and a sale is made, the overplus of the purchase money, after paying Baker his claim, and appellees their mortgage, with interest, should be paid over to Baker and not to Hall. In this view, possession should not have been decreed to appellees, nor should Baker be required to account for the rents and profits, for, so far as these are concerned, Baker is Hall. Hall would have been entitled to the possession and to the rents, if he had not yielded the possession to Baker, and the right must be adjudicated as though Hall was still in possession.

We see no other objections to the decree, and affirm it, except as to the two last items, possession and the rents and profits; and because the one was decreed to appellees, and Baker required to account for the others, the decree is reversed and the cause remanded.

*Decree reversed.*