## VILLAGE OF MORGAN PARK

v.

## THOMAS GAHAN AND EDWARD BYRNE.

*Pleading—Notice—Ordinance—Rescission of Contract—Jurisdiction of Appellate Court—Special Assessment—Mistake of Law—Deposit.*

Village of Morgan,Park v. Gahan.

1.  A special count is never necessary in actions for money had and received.

2.  An advertisement by a village for bids for work on a local improvement, to be paid for by special assessment, while it charges the bidders with notice of the ordinance providing for the improvement in question, does not affect them with notice of a subsequent ordinance providing the method in which the special assessment shall be levied.

3.  Where an ordinance providing for a local improvement declares that it shall be paid for by special assessment, the passage of a subsequent invalid ordinance providing that the assessment shall be paid in ten annual installments, is such an attempt to change the proposed contract as will justify a bidder in refusing to execute it.

4.  The statute which excludes from the cognizance of the Appellate Court " cases involving the validity of a statute," does not take away its jurisdiction to decide whether a statute has been repealed.

5.  The act of March 17, 1874, which provides that water supply pipes may be paid for by assessments in annual installments not exceeding ten in number, and bearing interest not exceeding ten per cent, was repealed by implication by the act of April 29, 1887, which provides that special assessments for any local improvement may be divided into five annual installments bearing interest at six per cent.

6.  The principle that money paid with full knowledge of the facts, but under a mistake of law, can not be recovered, does not apply to money deposited as security without any intention of the title thereto passing.

[Opinion filed May 14, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. CONSIDER H. WILLETT and FREDERICK S. MOFFETT, for appellant.

Messrs. MASON B. LOOMIS and ALBERT H. VEEDER, for appellees.

GARY, P. J.   June 9, 1887, the Village of Morgan Park passed an ordinance providing for the laying of water supply pipes on several streets of the village, the second section of which is, "that the cost and expense of said improvement shall be defrayed by a special assessment to be made in accordance with sections eighteen (18) to fifty-one (51) inclusive, in article nine (9) of the act," concerning cities and villages.

By a general ordinance of the village passed October 1, 1887, it was provided that all contracts (with an exception not necessary to notice here) for the making of any public improvements to be paid for in whole or in part by a special assessment, should be let to the lowest responsible bidder; that advertisements for bids should be made; that all proposals, when the bid was over $500 and less than $5,000 should be accompanied by a deposit of not less than five per cent of such bid, and when such bid was $5,000 or over, not less than two per cent of such bid, which deposit should be forfeited to the village if the bidder should fail to execute a contract according to the proposal; and that where the improvement was to be paid for by special assessment, the contract should so provide, and the village should in no case be liable for such payment except from such special assessment, and that the contract should so provide. Sec. 49 of Art. 9, before referred to, provided that persons taking contracts from cities or villages, who agree to be paid from special assessments, shall have no claim upon the city or village except from the collection of such assessments.

The village advertised for proposals for the contemplated improvement to be received up to 8 o'clock P. M., of the 7th day of January, 1888, when they would be opened at the regular place of meeting of the board of trustees by the board. By a proposal dated January 7, 1888, the appellees bid for the work by the lineal foot, and though it does not appear how much the total would be, yet they deposited $1,000, which is the subject of this suit.

They refused to enter into the contract their proposal required; demanded of the village a return of the money, which demand being refused, the appellees brought this suit. The declaration contains the common count for money had and received almost hidden among many that have no application to the case.

The appellant objects that if the appellees were entitled in any event to recover, the declaration should be special, advising them of the ground upon which the appellees claim the money. There is nothing in that objection. Ever since the

Village of Morgan Park v. Gahan.

case of Moss v. Macferlan, 2 Burr, 1005, was decided, it has been undisputed authority for this count in all cases where money received by the defendant ought to be paid by him to the plaintiff, however special the circumstances.   1 Chit. Pl. 351.

As to the merits on the facts as thus far stated, the appellees would not seem to have much of a case; but the further facts are that July 2, 1887, the village passed another ordinance providing that the portion of the estimated cost of the improvement provided for by the ordinance of June 9, 1887, which should be assessed upon property specially benefited, should be payable in ten annual installments, all of which, except the first, should bear interest at the rate of six per cent per annum.   This the village assumed to do under "An act to provide for the laying of water supply pipes, by bonds and special assessment, payable in installments," of March 17, 1874, which did authorize cities and villages, whenever they should provide by ordinance for the laying of water supply pipes to be paid for by special assessment to "provide in such ordinance, or by an ordinance to be adopted at any time prior to the issuance of the warrant to the collector for collection of such assessment," that such assessment should be so payable in installments.

July 13, 1887, the County Court confirmed the assessment made under the ordinance of June 9, 1887, but whether a warrant for its collection was issued, the record does not show.

January 6, 1888, being the day before the proposal of the appellees, the village presented to the County Court a petition, asking that court to direct the issue of a warrant to collect the assessment in accordance with the ordinance of July 2, 1887.   No action of the County Court upon this petition is shown by the record, nor any legislation referred to by counsel, under which that court could have acted upon that petition.   If, however, there be no such legislation, the worst consequence of presenting the petition is that it was merely labor lost.

The record does not show any notice in fact to the appel-

lees of the ordinance of July 2, 1887, or of the petition of January 6, 1888, nor is there any presumption of law that the appellees had any knowledge of either the ordinance or petition when they made their bid. The advertisement for the proposals did state that a deposit must accompany the bid "subject to forfeiture, as provided by the village ordinances," that " the contracts will be made in accordance with the village ordinances and all proposals must be made with reference thereto," and that "payment will be made from special assessment moneys only." And it referred to specifications on file with the village as to the materials to be furnished and the work to be done.

Unquestionably, by the advertisement, a bidder was put upon inquiry of, and, therefore, was charged with notice of the terms of the ordinance by which the improvement was authorized, and of some ordinance or ordinances relating to village contracts and forfeiture of deposits. But when such a bidder had found the ordinance of June 9, 1887, and of October 1, 1887, the one providing for this improvement, and the other covering the subject of contracts with the village, there was nothing, so far as this record shows, to raise a suspicion in his mind that there could be anything else to affect his interest as such bidder. Now, treating the question as practical business men would look at it, the statement in Section 2 of the ordinance of June 9, 1887, that the costs and expenses of the improvement should be defrayed by a special assessment to be made in accordance with Sections 18 to 51 inclusive, in Article 9; which sections cover not only the making, but the collection of such special assessment; was a representation to one proposing to bid, that if he entered into a contaact with the village, furnished the materials and did the work which the first section of the ordinance of June 9, 1887, called for, the village would pay him for it as soon as they could get the money by acting under Sections 18 to 51 inclusive, of Article 9; that even if the act of March 17, 1874, was in force, the village would not exercise the privilege which it conferred. If the appellees, before making their bid, had had notice of the ordinance of

July 2, 1887, then the ordinance would have furnished no excuse for not complying with the bid they made with that knowledge, provided the ordinance was valid. But if the ordinance was invalid, then, if the village, by the ordinance and the petition to the County Court in pursuance of it, showed its intention to pursue a course which would result in a failure to collect the assessment, from the proceeds of which only the appellees were to be paid, common justice, as well as the law, would justify their refusal to proceed.

What reason operated upon the minds of the appellees, inducing their refusal to enter into a contract with the village, only appears from the testimony of one of them, that their attorney told them that the assessment was not in accordance with the law. What his objections to it were does not appear, and the course the case takes here, makes it unnecessary to consider the objections now urged to the assessment as originally made and confirmed by the County Court. For if it be correct to say that the original ordinance was a representation that the village would not avail itself of the privileges of the act of March 17, 1874, and that there being no evidence that the appellees, before making their bid, had notice that the village did not intend to abide by that representation, the appellees should, therefore, be presumed to have made their bid on the faith of that representation; then if the fact appears that the village did not intend to adopt the measures within its power to procure the means of paying for the materials and work, and which measures the original ordinance had represented that they would adopt, it is clear that the village can not retain money received by it under a representation so material to the interests of the appellees, and which the village had voluntarily falsified.

It is quite a different thing to a man putting his capital and labor into an enterprise, to have nine-tenths of his compensation put into annual installments, even with six per cent interest, from what it would be to receive the whole as soon as it could be collected by proceeding under the sections of Article 9, as the original ordinance, in effect, represented would be done. Nor were the appellees under any obligation

as a condition precedent to reclaiming their money, to remon-strate with the village and endeavor to induce it to retrace its steps or change its course.

The village received the money and claims a forfeiture upon a specific state of facts. If not entitled to a forfeiture upon those facts, it must restore the money, and when the parties are in *statu quo*, they may make a new bargain if they can agree.

Forfeitures are not favored by the law. A party insisting on a forfeiture must show that he was himself ready, able and willing to perform his part. Baker v. Bishop Hill Colony, 45 Ill. 264; Mix v. Beach, 46 Ill. 311.

Although this view of the case makes it really unnecessary to decide whether the act of March 17, 1874, was in force in 1887, yet, if that act was not then in force, but had been repealed, the attempt by the village to proceed under it, makes the right of the appellees to refuse to enter into the contract still clearer.

The statute defining the jurisdiction of this court, and excluding therefrom " cases involving the validity of a stat-ute," does not take away the jurisdiction to decide whether a statute has been repealed. Cairo v. Bross, 99 Ill. 521.

Now the act of March 17, 1874, had relation only to water supply pipes, and provided for payment of assessments by annual installments, not exceeding ten in number, and bearing interest not exceeding ten per cent, without in terms fixing the amount of the several installments, whether equal or unequal. By an act entitled, " An act to amend Article 9 of an act entitled ' An act to provide for the incorporation of cities and villages,' approved April 10, 1872, in force July 1, 1872, by adding thereto the following sections," approved and in force by an emergency clause April 29, 1887, it was pro-vided, by language too long to quote at length, that any spe-cial assessment for any local improvement might be divided into installments, the first of which should not exceed twenty-five per cent of the whole and the residue should be divided into four equal annual installments bearing interest at six per cent. The intent of the Legislature is evident, that this

amendment of Article 9 should be the whole law upon the subject to which it relates.   The principle of uniformity as to legislation, taxation and legal proceedings has in this State become a part of the constitution.

That the same subject should be governed by inconsistent regulations, to be adopted as alternatives, is opposed to that principle ; not that a statute is to be held invalid on that ground, but as that is the policy of the State, it may be looked to in ascertaining the legislative intention.   But here the two statutes are not only inconsistent with, but repugnant to each other.

The last statute requires that the first installment shall not exceed twenty-five per cent of the assessment; that the residue shall be divided into four equal installments, and that they shall bear interest at the rate of six per cent.

Whatever may be said of the first and last of these requirements, the second is directly opposed, and in the particular in which the ordinance of July 2, 1887, followed the act of March 17, 1874, to the provision of the last named act, that the installments might be any number not exceeding ten. Cairo v. Bross, 101 Ill. 475, and cases there cited by counsel for Bross.

So the Supreme Court has recently held, in Union Tr. Co. v. Trumbull, 23 N. E. Rep. 355, that the amendment in 1887 of the eighth section of the act to establish Appellate Courts, by which amendment these courts " have jurisdiction of all matters of appeal or writs of error from the final judgments, orders or decrees on any of the County Courts," repeals Sec. 122 of the act of 1874, concerning appeals from County Courts to the Circuit Courts.

The principle that money paid with full knowledge of the facts, but under a mistake as to the law, can not be recovered, has no application to a deposit of money as security, the title to which is not intended to pass.   If, therefore, the appellees had in fact had notice of the ordinance of July 2, 1887, and the petition of January 6, 1888, the result would not be changed.

The judgment must be affirmed.

*Judgment affirmed.*