## McCauley et al. v. Coe et al.

1. EQUITABLE INTEREST—*Right to Mortgage.*—A person having a right under a valid contract to acquire a conveyance of premises of which he is in possession, and under the contract which gives him the right to such possession, the right to acquire a conveyance is an equitable interest in the premises which such person can legally mortgage, and any conveyance such person may afterward make will not abridge the interest of the mortgagee.

2. FORFEITURES—*In Courts of Equity.*—A court of equity will never enforce either a penalty or a forfeiture.

**Memorandum.**—In chancery. In the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Bill to remove cloud, etc.; decree of dismissal for want of equity; appeal by complainants. Heard in this court at the October term, 1893, and affirmed. Opinion filed February 13, 1894.

The statement of facts is contained in the opinion of the court.

APPELLANTS' BRIEF, E. W. ADKINSON, ATTORNEY.

The proposition contained in the lease constituted but a continuing offer to sell, and could be merged into a contract only by an acceptance and compliance with its terms. Haven & White v. Wakefield et al., 39 Ill. 509; Larmon v. Jordan, 56 Ill. 204; Sutherland v. Parkins, 75 Ill. 338; Corcoran v.

White et al., 117 Ill. 118; Harding v. Gibbs, 125 Ill. 85; Willard v. Taloe, 75 U. S. 567.

Even though the stipulation in the case could be constructed as an agreement to sell, there was a forfeiture and termination thereof. Chrisman v. Miller, 21 Ill. 227; Murray v. Schlosser, 44 Ill. 14; O'Neal v. The Wabash Avenue Baptist Church, 48 Ill. 349; Anderson v. McCarty et al., 61 Ill. 64.

APPELLEES' BRIEF, THORNTON & CHANCELLOR, ATTORNEYS.

One having a contract to purchase real estate has such an interest as may be mortgaged. Baker v. Bishop Hill Colony, 45 Ill. 264; Curtis v. Root, 20 Ill. 518; Hagar v. Lawrence Brainerd, 44 Vt. 294; Houghton v. Allen, 16 Pacific, 532.

A lease with privilege of purchase constitutes a mortgagable interest. Bank of Louisville v. Baumeister, 87 Ky. 6.

The agreement between Butler and Stauffer must be considered a contract for sale and not of leasing. They were negotiating for the sale and purchase of the premises and this lease, so-called, was the result of their bargaining, and the sum of $200 was paid in cash upon the delivery of possession of the premises and the further sum of $200 was to be paid upon the termination of the term mentioned in the contract, which was a most extraordinary provision for payment of rent, in view of the fact that the premises were not worth more than sixteen or eighteen dollars per month, as shown by the testimony. When there is a plain intention for a contract for sale, the law will construe a lease containing a provision for sale to be a contract for sale notwithstanding the installments to be paid are called rent. Lucas v. Campbell, 88 Ill. 447; Murch v. Wright, 46 Ill. 487; Hervey v. U. S. Locomotive Works, 93 U. S. 664.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This cause comes here by appeal from a decree of the Superior Court dismissing, for want of equity, the supple-

mental bill filed by appellants to have removed, as a cloud upon their title to certain real estate in Cook county, a certain trust deed made by one Butler to the appellee, Coe.

In 1885, Daniel Stauffer was the owner of the premises in question.

Pursuant to some verbal negotiations between himself and the said Butler, Stauffer built a house on the premises according to the desire of Butler, and when the house was finished, and on October 29, 1885, Stauffer executed a lease of the premises to Butler for the term of one year from November 1, 1885, at the specified rental of $500 for the term, payable in three installments, viz.: $100 on the execution of the lease; $100 on January 1, 1886, and $300 on or before November 1, 1886, " with interest at seven per cent from date and cost of insurance." The lease was drawn on one of the ordinary forms in use in Chicago, and contained all the customary provisions, covenants and conditions.

Following the agreement to pay rent as above, there is contained in the body of the lease, an agreement as follows:

" It is further agreed on full payment of said sums and the further sum of $1,600, with seven per cent interest from this date in manner following, one note for $500, due on or before November 1, 1887, and two notes for $550 each, due respectively November 1, 1888 and 1889, all bearing interest at seven per cent, payable to the order of Daniel Stauffer and secured by a trust deed on above premises, the said first party will convey to second party the above premises by warranty deed, subject to taxes and assessments of A. D. 1885 and subsequent years."

The contract contains no provision concerning a forfeiture, and time is not declared to be of its essence.

" Said sums " refer to the $500, interest, and cost of insurance, stipulated as rent; and it will be observed that the " further sum of $1,600 " is to draw interest at seven per cent from the date of the lease. It would seem, therefore, that the present value, at the date of the lease, of the consideration for which a conveyance was agreed to be made, was $2,100, which is the sum Butler testified he agreed to

pay for the premises, including the house, which it is conceded was built for him upon the lots.

Butler made the first payment of $100 and entered into possession of the premises, and afterward paid the second installment of $100, but made none of the other payments. Afterward, and while in possession of the premises under the lease, Butler, in conjunction with one Albert B. Pine, executed to the appellee, Albert L. Coe, a trust deed on said premises, dated August 16, 1886, and recorded August 17, 1886, to secure their promissory note of that date for $400, payable three years after date to the order of one Sarah Curtis, with interest at seven per cent per annum.

The trust deed aforesaid, given to secure this last mentioned note, constitutes the alleged cloud upon the premises.

Afterward, and about November 3, 1886, Butler executed and delivered a quit-claim deed of the premises back to Stauffer, and surrendered possession of the premises to Stauffer.

Stauffer subsequently, and in April, 1890, filed the original bill in this cause to have said trust deed to Coe declared to be a cloud upon the premises and removed as such. While his bill was pending, Stauffer sold and conveyed the premises to the complainants, who, first obtaining leave therefor, filed their supplemental bill, setting up substantially the same facts and praying for the same relief as the original bill.

Whatever may have been the negotiations between Stauffer and Butler which preceded the making of the written agreement, or lease, such negotiations culminated and became merged in that written instrument, and we can look only to that to determine what the contract between the parties was. The contract, so made, was one of leasing, by which both parties were bound, and a contract by Stauffer, by which Butler was not bound, to convey the demised premises to Butler upon certain terms and conditions, the performance of which were optional with Butler. Stauffer could compel the payment by Butler of the $500 stipulated to be paid as rent, but he could not compel the payment of

the additional $1,600 for which he had contracted to convey
the premises to Butler, except in case Butler should do
something further. The agreement by Stauffer to convey
the premises was binding upon him only upon condition
that Butler should, in addition to paying the $500, give his
notes and trust deed for the further sum of $1,600. Butler
did, however, by paying the first $200 of the $500 when it
became payable, acquire a right under the contract to have
the premises conveyed to him by Stauffer upon paying the
remaining $300 when it should become due, and executing
and delivering his notes and trust deed for $1,600 more.
The right to acquire a conveyance of the premises was in
full force in Butler at the time he and Pine executed the
trust deed to Coe, and he was in possession of the premises
under the contract which gave him the right. That right,
in our opinion, constituted an equitable interest in the prem-
ises which Butler could mortgage, and did mortgage, to the
appellee, Coe. Baker v. Bishop Hill Col., 45 Ill. 264; Hagar
v. Brainerd, 44 Vt. 294; Bank of Louisville v. Baumeister,
87 Ky. 6.

The conveyance by quit claim deed subsequently made by
Butler to Stauffer, had no effect to abridge the interest ac-
quired by the mortgagee. The mortgage, or trust deed,
was on record, and Stauffer was bound with notice of it.
What rights or remedies, if any at all, are susceptible of
enforcement under the trust deed is quite another matter,
about which we express no opinion whatever. No other
attempt was made by Stauffer to terminate his contract to
convey the premises than the acceptance by him of the
quit claim deed thereto made by Butler.

And whether a declaration of forfeiture was necessary, or
could have been made, by Stauffer, after Butler had quit-
claimed to him all his interest in the premises under the
contract, or what effect is to be given to the recitals in that
deed, we do not decide. If, as we hold, Butler had an
equity in the premises which he could and did mortgage,
and Stauffer had notice of the mortgage, then it is plain
they could not by any new contract between themselves ad-

versely affect the rights of the mortgagee.   To give the relief that is prayed by the appellants would be in effect for a court of equity to declare a forfeiture of the mortgage for the non-performance of a contract the appellees have never been called upon or notified to perform, which is something never done in equity.

" A court of equity will never enforce either a penalty or a forfeiture."    Traders Ins. Co. v. Race, 142 Ill. 338.

The questions involved are of much importance, and while we are not in a condition of hesitancy about them, it would be very desirable to have an expression of the Supreme Court upon them.   The decree of the Superior Court will be affirmed.