M. Z. PEARCE v. SAMUEL WATKINS AND WIFE, BESSIE WATKINS, DEVEREAUX WATKINS AND WIFE, RUTHIE WATKINS, ALONZA MERRITT AND WIFE, FARELLA MERRITT, CHARLES HODGE AND WIFE, LORICE HODGE.

(Filed 21 May, 1941.)

**1. Mortgages § 23—**

The purchaser of the equity of redemption is entitled to all the rights, titles and equities of his grantor, including the right to pay off the debt according to the terms of the deed of trust.

**2. Mortgages § 13b—**

A substituted trustee, the substitution having been made in accordance with the statutory provisions, succeeds to all the rights, titles and duties of the original trustee, and has the power to foreclose the instrument according to its terms upon default. Michie's Code, 2583 (a).

**3. Same—**

The duly appointed substituted trustee can bind the *cestui.*

**4. Mortgages § 39b—**

While it is necessary that a deed of trust be foreclosed according to its terms and the trustor is entitled to a strict compliance therewith, the recitals in the trustee's deed to the purchaser are *prima facie* correct and the presumption of law is in favor of the regularity of the execution of the power of sale, and the burden is upon the parties attacking the foreclosure to prove the irregularities relied upon by them.

**5. Mortgages § 39c: Equity § 2—Purchaser of equity of redemption with notice of pendency of action to restrain consummation of foreclosure, held estopped by laches from attacking foreclosure sale.**

Plaintiff, the purchaser of the *locus in quo* at the foreclosure sale, instituted this action to recover possession of the land against the purchasers

of the equity of redemption. It appeared that at the time defendants purchased the equity of redemption the land had been sold under foreclosure and there was then pending an action by the trustor, defendants' grantor, seeking to enjoin the consummation of the sale, and that defendants had actual knowledge of the suit. It further appeared that judgment was entered in the suit dissolving the restraining order and directing the trustee to execute deed to the purchaser, plaintiff in this action, that the trustee executed deed to plaintiff in compliance with the judgment, and that thereafter plaintiff advised defendants he had purchased the land, and made certain improvements on the land, defendants being in possession at the time with the consent of plaintiff and making no protest. *Held:* The action of the court in sustaining plaintiff's demurrer to defendants' counterclaim and cross action attacking the foreclosure, the trustee's deed, and the prior judgment entered in the cause, on the ground of irregularity, there being no allegation of fraud or mutual mistake, and the action of the court in excluding evidence offered by defendants in support of their counterclaim, and directing a verdict for plaintiff on the issue of title, cannot be held for prejudicial error, since if defendants had any rights they slept on them and are now estopped by their laches.

APPEAL by defendants Samuel Watkins and wife, Bessie Watkins, from *Sink, J.,* at November Civil Term, 1940, of WAKE. No error.

This is an action brought by plaintiff against defendants for the recovery of certain pieces of land and rents. The plaintiff alleged that he was the owner in fee simple of the land and defendants were in the unlawful possession of same and refuse to surrender possession of same. The defendants Watkins denied these allegations and for a further answer and defense, and as a counterclaim and cross action pray for certain affirmative relief.

The plaintiff acquired title to said lands under a deed from Joseph B. Cheshire, Jr., Substituted Trustee, under date 20 June, 1939. Joseph B. Cheshire, Jr., Substituted Trustee, sold the said lands under authority of the deed of trust executed by Charles E. Montague and wife, Lillian Montague, dated 21 February, 1928, to A. M. Bonner, Trustee, which deed of trust is duly registered in the office of the register of deeds for Wake County, North Carolina. Joseph B. Cheshire, Jr., was thereafter substituted trustee in the place and in the stead of A. M. Bonner.

The defendants Watkins claim the equity of redemption under a deed from Charles E. Montague to defendants, Bessie Watkins and her husband, Samuel Watkins, dated 28 November, 1938, filed for registration in the office of the register of deeds for Wake County, on 27 January, 1939, and recorded in Book 795, p. 378.

In the trial of the case, plaintiff offered the record of said deed from Joseph B. Cheshire, Jr., Substituted Trustee, to M. Z. Pearce, Register's Book 795, page 500, which deed is dated 20 June, 1939, and describes the lands described in the complaint, and among other things contains recitals as follows:

"That whereas on February 21, 1928, Charles E. Montague and wife, Lillian Montague, executed and delivered to A. M. Bonner, Trustee, a certain deed of trust securing an indebtedness therein recited, which deed of trust is recorded in the office of the Register of Deeds of Wake County, North Carolina, in Book 523, page 170:

"And Whereas, default was made in the payment of the indebtedness thereby secured as therein provided, and at the request of the holder of the said indebtedness and under and by virtue of the authority in the said deed of trust, and in accordance with the terms of same, and after due advertisement as in said deed of trust prescribed and by law provided, the said Joseph B. Cheshire, Jr., Trustee; as aforesaid, did on the 15th day of December, 1936, at 12 o'clock noon, at the Courthouse door of Wake County, expose to public sale the lands hereinafter described and also described in the said deed of trust, when and where A. J. Templeton became the last and highest bidder at the price of $300.00.

"And Whereas, on December 23, 1936, the bid was raised by deposit with the Clerk of the Superior Court by M. Z. Pearce, and resale ordered by the Court, which sale was duly advertised in accordance with the law and the said deed of trust, and the land resold at the Courthouse door of Wake County on January 11, 1937, when and where W. R. Pearce became the last and highest bidder at the price of $335.00.

"And Whereas, both at the sale on December 15, 1936, and at the resale on January 11, 1937, the said property hereinafter described was sold specifically subject to any and all taxes as announced in the advertisements and at the sales.

"And Whereas, the said sale and resale were reported to the Clerk of the Superior Court of Wake County, in Book J, at page 14.

"And Whereas, the bid of said W. R. Pearce was duly assigned to M. Z. Pearce.

"And Whereas, a suit was instituted in the Superior Court of Wake County by Charles E. Montague and wife, et als, against A. M. Bonner and Joseph B. Cheshire, Jr., Substituted Trustee, et als, wherein the said substituted Trustee was enjoined from completing and making a deed under the resale and assignment of bid to M. Z. Pearce.

"And Whereas, in the said suit by Judgment, C. I. D. No. C-312, Minute Docket No. 42, Page 47, and Judgment Docket 47, Page 138, the said resale, as set out, and assignment of bid were confirmed and approved, and the said Substituted Trustee was ordered and directed by the said Judgment to complete the said resale and convey the property hereinafter described and in the said deed of trust described to M. Z. Pearce, upon his complying with the terms of said resale.

"And Whereas, the said M. Z. Pearce has complied with the terms of resale and paid the purchase price, and also complied with the terms of said Judgment."

The judgment of the court below is as follows: "This cause coming on to be heard at this November Civil Term, 1940, of the Superior Court of Wake County, by the Hon. H. Hoyle Sink, Judge presiding, and a jury. In apt time the plaintiff demurred ore tenus to the cross-action of the defendants, and it appearing to the Court, and the Court finds it a fact, that the defendants, by their cross-action, seek relief affecting parties other than those to this action, and by their cross-action seek to have set aside, cancelled and declared void a judgment rendered in a suit in this Court, to which suit none of the parties to this action were parties. It is, therefore, Ordered and Decreed that the plaintiff's demurrer ore tenus to the cross-action of the defendants be, and the same is allowed."

The following issues were submitted to the jury:

"1. Is the plaintiff the owner and entitled to possession of the land described in the complaint?

"2. What amount, if any, is the defendant indebted to plaintiff for rents for the year 1939 and 1940?

"The jury having answered the first issue, 'Yes,' and the second issue '$125.00.'"

"Now therefore, it is hereupon Ordered, Adjudged and Decreed that the plaintiff, M. Z. Pearce, is the owner of, and entitled to possession of the land described in the complaint, and that the plaintiff have and recover possession of the said land from the defendants, and that the plaintiff have and recover of the defendants the sum of $125.00 to be paid from and out of the deposit made in this case by the defendants in lieu of bond. H. Hoyle Sink, Judge Presiding."

The defendants, Watkins, made several exceptions and assignments of error and appealed to the Supreme Court. The material ones and other necessary facts will be set forth in the opinion.

*Little & Wilson and Jones & Brassfield for plaintiff.*
*R. Roy Carter for defendant.*

CLARKSON, J. An action over the land in controversy in this case was before this Court heretofore. *Pearce v. Montague,* 209 N. C., 42. The decision in that action is not material to this controversy, but it is there said, at pp. 43-4: "When the defendant executed and delivered to the plaintiff his mortgage, he was the owner of the equity of redemption in the lands and the mortgagee could not extinguish this equity of redemption by his purchase of the land at the tax sale, and the title which the mortgagee acquired at the tax sale is held by him in trust for himself and the defendant, the mortgagor, since when a mortgagee pays off an encumbrance and acquires a title superior to his title as mortgagee, he holds such title so acquired as trustee for the benefit of himself and the mortgagor. *Cauley v. Sutton,* 150 N. C., 327."

The defendants set forth certain questions involved: "1. Did the Court commit error in sustaining plaintiff's demurrer ore tenus to defendants' further answer and defense and cross-action?" We think not, taking the record as a whole the judgment below was correct. The defendants purchased the equity of redemption of the lands in controversy.

In *Dameron v. Carpenter,* 190 N. C., 595 (597), the principle of law is thus stated: "The plaintiffs, purchasers, are entitled to all the rights, titles and equities of their grantor, McLean, including the right to pay off the indebtedness according to the terms of the mortgage, and thereby clear their title. *Baker v. Bishop Hill Colony,* 45 Ill., 264; *Schoffner v. Fogleman,* 60 N. C., 564. Equity subrogates the purchaser of the equity redemption to the rights of the mortgagor to clear the title and procure the legal estate only as to the mortgaged premises, and no further."

We think it is unnecessary to set forth in detail the further answer and defense, as a counterclaim and cross action of defendants. It is long and treats mostly of records. In it defendants pray judgment: "That the defendants, Samuel Watkins and wife, Bessie Watkins, have an appropriate order and decree cancelling, setting aside, annulling and striking from the records as a lien or a cloud upon their title the following instruments of record: (a) deed of trust, Charles E. Montague and wife, to A. M. Bonner, Trustee, dated February 21, 1928, recorded in Book 523, page 170, registry of Wake County; (b) deed from Joseph B. Cheshire, Jr., substituted Trustee, dated June 20, 1939, recorded in Book 795, page 500, registry of Wake County; and (c) judgment in the case of Charles E. Montague, et als, v. A. M. Bonner, et als, entered at June Term, 1939, and docketed in Judgment Docket 47, page 138, office of the Clerk of the Superior Court of Wake County."

M. Z. Pearce, the plaintiff, testified, in part: "The day that I had the deed recorded, I went to see Sam Watkins, and asked him if he knew that I had a deed for the land. He said that he was expecting me or Mr. Beck one to get a deed, he didn't know which one. I told him that I had the deed recorded that day and asked him what he wanted to do, and he said 'I would like to rent the land for this year and will pay the fourth.' I said, *'That is all right, I will rent it to you for the fourth.'* I served notice and made demand on Sam Watkins for the land after the first of the year, and rented it to another man, O. C. Pearce, *and before Christmas I went down there and covered the house that the tenant was living in and built a barn.* Sam Watkins made no complaint about the improvements I was making, and said nothing at all to me. I spent about $300.00 on these repairs. After I put the repairs and improvements on the land, and after I thought he had plenty of time to sell his crop, I demanded the place, and the payment of the rent. He said that he had a deed for the land, and that was the first time that I knew that

he claimed the land. That was just before I was ready to move my man on the property."

Defendant, Samuel Watkins, testified, in part: "I took possession of the land under that deed from Charles E. Montague, and he had been living there on the land for 34 or 35 years, and *he claimed the land all that time. He died January 13, 1939. I took possession of the land when he died* and planted crops on it. Mr. Pearce came to see me on June 20th or 21st, and I went with him to see the lines, and *he told me that he had bought the land,* and he asked me some questions about the amount of fertilizer I had used under the crops planted on this land. When he got back to his car parked in front of my door, he said to me, *'Sam, I am glad you are tending' this here land because it was so late I couldn't plant nothing on there by the time I got it. Now, when this fall comes I will have a little rent and since it's so late you can just give me the fourth.' I told him if it is necessary for me to pay you rent, I will.* (Cross-examination). *I heard there was a lawsuit going on. I went on cultivating the land and I saw Mr. Pearce painting barns and stables and repairing the house. I didn't object to Mr. Pearce, but I did object to his son when he come to do the work.* I told him 'I object to you or Mr. Pearce doing anything over here because I have got a deed to it.' I went to him in September and offered to pay something, but it was not because I thought his claim was ahead of mine. I thought mine was ahead of his, yet I wanted to pay him something because he had bought the mortgage that I was due to pay off and I wanted to pay him."

The above evidence indicates that Watkins knew of the lawsuit and he did not make himself a party or attempt to pay the prior lien; nor was R. D. Beck, whom he now claims was the owner of the debt to whom it was transferred, made a party. The trustee, A. M. Bonner, was a party to the restraining order. The trustee held the legal title to the land and under the applicable statute the substituted trustee was successor of the legal title.

In *Carswell v. Creswell,* 217 N. C., 40 (46), it is written: "In *Orange County v. Wilson,* 202 N. C., 424 (427), is the following: 'Besides, the trustees of the petitioners were parties defendant and were served with process.' The principle was so well settled that it was recognized without citing authorities, that a trustee could bind the *cestui que trustent."*

In the recital in the deed to plaintiff is the following: "And Whereas, default was made in the payment of the indebtedness thereby secured as therein provided, *and at the request of the holder of the said indebtedness and under and by virtue of the authority in the said deed of trust, and in accordance with the terms of same,"* etc. (Italics ours.)

N. C. Code, 1939 (Michie), sec. 2583 (a), provides for substitution of

21—219

trustees in mortgages and deeds of trust, which the record indicates was done in this case.

In *Pendergrast v. Mortgage Co.,* 211 N. C., 126 (128), is the following: "Under the provisions of the deed of trust which appear in the record, and under the provisions of the statute (ch. 78, Public Laws of N. C., 1931, N. C. Code of 1935, sec. 2583 [a]), the substitute trustee was authorized to complete the foreclosure of the deed of trust by the execution of a deed to the purchaser at the sale made by the original trustee, upon his compliance with his bid. See *Mortgage Corp. v. Morgan,* 208 N. C., 743, 182 S. E., 450."

We see no error in the exclusion of certain instruments set forth in the record and offered by defendants. The court below in the judgment set forth, in part: "In apt time the plaintiff demurred *ore tenus* to the cross-action of the defendants, and it appearing to the Court, and the Court finds it a fact, that the defendants, by their cross-action, seek relief affecting parties other than those to this action, and by their cross-action seek to have set aside, cancelled and declared void a judgment rendered in a suit in this Court, to which suit none of the parties to this action were parties."

No attack on any of the conveyances complained of by defendants was made by them on the ground that they were procured by fraud or mutual mistake, nor was this set up as a defense. If defendants had any rights, they slept on them and it is now too late for them to complain. In fact, the deed from J. B. Cheshire, Jr., Substituted Trustee, to plaintiff, sets forth in detail and recites all the instruments by which the power was exercised which gave him authority to make the deed. This was *prima facie* evidence of their *bona fide* correctness and there is neither allegation or proof to show they were not.

In *Jenkins v. Griffin,* 175 N. C., 184 (186), it is said: "Powers of sale in a mortgage are contractual, and as there are many opportunities for oppression, courts of equity are disposed to scrutinize them and to hold the mortgage to the letter of the contract. It is essential to the validity of a sale under a power to comply fully with the requirements as to giving notice of the sale. *Eubanks v. Becton,* 158 N. C., 234. This is the rule, but in its enforcement 'The presumption of law is in favor of the regularity in the execution of the power of sale; and if there were any failure to advertise properly, the burden was on defendant (here on plaintiffs) to show it.' *Cawfield v. Owens,* 129 N. C., 288; *Troxler v. Gant,* 173 N. C., 425. How have the plaintiffs sustained this burden? The deed to the purchaser was introduced, and it recites that the sale was duly advertised, which recital is *prima facie* evidence of its correctness (*Lunsford v. Speaks,* 112 N. C., 608)." *Freeman v. Ramsey,* 189 N. C., 790 (796).

In *Mfg. Co. v. Jefferson,* 216 N. C., 230 (232), we find: "The recitals

in the recorded deed from the trustee to the Roanoke Bank & Trust Company established *prima facie* right in the purchaser at the foreclosure sale, and the plaintiff as grantee of the purchaser occupied the status of an innocent purchaser for value without notice."

The defendants make the further contentions : "2. Did the Court commit error in excluding testimony of defendant and in excluding defendants' evidence of records of title to the lands involved, including judgment alleged to be void? 3. Did the Court commit error in directing a verdict for the plaintiff upon the issue of title? 4. Did the Court err in denying defendants' motion for judgment or directed verdict in their favor?" For the reasons given, none of these contentions made by defendants can be sustained.

On the entire pleadings, record and evidence, we think the judgment of the court below is correct. Allegations without *probata* is of no avail to defendants. If technically the further defense was not demurrable—mainly conclusions of law—yet on the entire record there was no prejudicial or reversible error.

No error.