FROM LENOIR.
The plaintiff claimed title through his father, Lemuel Bird, by a sale made in August, 1823. The defendant claimed under Josiah Bird, a brother of the plaintiff, to whom the property was bailed by Lemuel, the father. It appeared that in April, 1823, Josiah Bird (being then in possession of the horse under the bailment of Lemuel, the bailee, in the presence of the bailor, delivered it to one Dawson, upon condition that if Dawson had the money to pay, for which he was bound as surety of Josiah, that then he (Dawson), was to sell the horse, and, after reimbursing himself, pay the residue of the money arising from the sale to Josiah. At the time this delivery was made, Lemuel Bird, the father, was present, and did not object. The defendant then produced a judgment and execution against Josiah and Dawson, and proved a satisfaction of it by Dawson in April, 1824.
His Honor instructed the jury that whenever the owner of property was present and did not object to a sale of it by a third person, he was precluded from setting up his title in opposition to that thus acquired. That they ought to inquire whether the defendant purchased the (180) property from Dawson or from Josiah Bird; whether the delivery to Dawson, in the presence of Lemuel, was a delivery in pledge, with authority to sell upon a contingency; whether, if Dawson had sold, the event upon which he was authorized to do so, had taken place; that if Dawson had not sold to the defendant, or if he had done so before the event occurred upon which he was authorized to sell, then the principle which prevented the owner from disputing a sale made in his presence did not apply, so far as the contract with Dawson was concerned.
A verdict being returned for the plaintiff, the defendant appealed.
From the testimony of Lemuel Bird it appears that Josiah Bird had the horse on loan from him from the spring of 1823, until after August of the same year. But in the intermediate time, after the loan to Josiah, and before Lemuel conveyed to the plaintiff, in April, 1823, Josiah delivered the horse to Dawson, upon the agreement that if Dawson had the debt to pay, for which he was bound as Josiah's surety, then he was authorized to sell it, pay himself, and return the balance of the money to Josiah. At that time Lemuel Bird was present and made no objection, although the title of the property was in him. The Judge properly told the jury that Lemuel, or any one claiming under him, were precluded from setting up any title adverse to the one thus acquired.
It would also appear that if in consequence of Lemuel's silence, and of the acts of ownership which Josiah exercised over it by his consent impliedly given, any bystander had afterwards purchased from Josiah (the transfer to Dawson being done away), a jury would be at liberty to infer from such silence and permission that Josiah had the right to sell. It would be natural to infer that if a person had (181) the power and right to convey property in trust he had the right to convey it absolutely. Had Lemuel disclosed the fact that the horse was his, and that he authorized Josiah to convey it in trust to Dawson, but that he had no further right to it, there would have been no room for misunderstanding the facts of the case. But as things stood, it was natural to suppose that the title was either in Josiah, the pawner, or in Dawson, the pawnee. These were facts, however, which might properly be left to a jury to judge of. Under these circumstances they might, perhaps, say that the title under Josiah was good.
If Dawson sold the horse before he actually paid the money for Josiah, but for the purpose of honestly paying it in his own defense, as surety for Josiah, although he had not suffered, I am not prepared to say that a title thus acquired from Dawson was not good. My impression is that it was. I think the rule for a new trial should be made absolute.