Ruffin, Chief Justice.
 

 — The defendant raises in this case the same questions, which he did, as plaintiff, in the suit which was formerly here.
 
 Coxe
 
 v.
 
 Camp,
 
 2 Dev. Rep. 502. As that case is thus brought to my notice, I avail myself of the occasion to correct an inaccuracy in the
 
 *53
 
 printed report, which gives to what I said quite a different meaning from that really expressed. I am made to “ regret” that there was no contract between the parties, and that, for that reason, the action could not be sustained: whereas, my words were, “ I agree” that there is no contract— speaking in reference to the previous opinion of the Chief Justice on that point, and intending to concur in it. I certainly did not mean to intimate, that the plaintiff had the legal right of the case, if he could get at it; for my opinion has always inclined against the construction of the ■statute, on which that action was founded.
 

 Since that case, and indeed long before, various questions that may arise on the act of 1812,
 
 (Rev. ch.
 
 830), and among them this which has arisen, presented themselves to the minds of most professional men. The members of the Court are no strangers to them; and after much consideration, concur unanimously in the opinion, that the facts stated in the record do not constitute a a defence at law, and, indeed, that the act of 1812,'does not authorise such a sale of an equity of redemption, upon any construction that can be put upon it by a Court of law, or be admitted to be just by a Court of Equity.
 

 According to the words of the statute, the lands mortgaged are not to be sold, but the equity of redemption in them. The argument is, that when the mortgagee sells for the very debt secured by the mortgage, that debt is necessarily extinguished; because the price given must be so much over and above the mortgage debt, since the thing sold is the interest of the debtor in the land, over and above that debt. This argument assumes that such a sale is within the act, and, in its application to this case, that a Court of law can ádminister the act in its proper' operation on the equitable rights of the parties. We deem both assumptions unauthorised.
 

 The Court has been always perfectly aware of the serious evils and the heavy oppressions to the distressed, which such a construction would tend to produce, and indeed would infallibly produce; and there was consequently a natural reluctance to adopt it. But the general words of the statute certainly embrace all equities of redemption,
 
 *54
 
 and there is a yet greater reluctance felt by all Judges, to admit restrictions upon such general terms, if no restriction be found in the statute itself. From .this cause has arisen our whole difficulty. Upon full consideration, however, it seems to us, that a limitation arises out of the act itself, and from the nature of the subject, as plainly as if it were expressed in so many words, excluding a sale by the mortgagee for the debt secured by the mortgage.
 

 The statute does not, in the second and third sections, operate, as in the first, to disturb the legal estate. In the case of a trust, the sale is of the land itself, as if the seisin was in the
 
 cestui que trust,
 
 and the seisin of the trustee is divested, and transferred to the purchaser. In the case of a mortgage, the land is not sold, but only the equity, as an equity. After the sale, the legal title is supposed to remain as it was before, and the equity to subsist independently, as distinct from the freehold. The nature of the interest sold, is not changed by the sale, speaking of it as a legal or equitable interest, as contradistinguished from each other. The only change in that respect, is simply to make an equity, as such, subject to legal process for the, benefit of the owner’s creditors. But the rights of the mortgagor, mortgagee and purchaser, as against each other, in respect of the former or present ownership of the equity of redemption, are purely equitable, and consequently their relief must be equitable. For these reasons, the statute is most properly to receive its interpretation from the Court of Equity; which, upon its own principles, must determine in what cases there is an equitable interest susceptible of sale, and what effect will be allowed there to a sale by execution between parties standing in the relation these do. Upon the known and clearest principles of equity, such a sale is forbidden; and the question is, whether that Court must understand the legislature as abrogating those principles by using general terms, when a particular purpose, comparatively consistent with those principles, was, obviously and alone, to be effected.
 

 Before proceeding to take that view of the subject, it may be proper to take the narrower one, to which a Court of law is competent. From the nature of an equity of re
 
 *55
 
 demption, although nothing at all in the eye of the common law, it is in equity the estate, and the value of it is measured by the value of both the legal and equitable rights, deducting the debt secured by the mortgage. It is said, a Court of law must take notice of it, not only as a thing saleable, but also understand its nature, and measure its value; and, consequently, that the whole price obtained for it, by a sale under execution for the mortgage debt, belongs to the mortgagor. If the premises be correct, the whole proposition must be so; for the conclusion seems rationally to follow. But the necessity for such an inference, and its absurdity when drawn, prove that there must be a fallacy in the premises. The proposition supposes the law to authorise, in this case, a sale under a
 
 fieri facias,
 
 without satisfying, and without the possibility of satisfying, any part of the debt in execution, for the thing is sold, subject still to the payment of the whole of that debt. The sum levied, is thus to be returned immediately to the person from whom it was levied; or, if necessarily applied to the execution, that person is to have an immediate legal right to demand the same sum from the plaintiff or the purchaser. This is a
 
 reductio ad a.bsurdum,
 
 which refutes’the argument. Such an idle and ridiculous futility would be altogether unworthy of the legislature. The nature of the writ
 
 of fieri facias,
 
 was well understood by the asse'mbly. It is an essential attribute of it, that the money raised on it, is in satisfaction of the debt, and is either to be paid to the plaintiff, or brought into Court, as his money. Unless the money be applicable to the debt, the writ gives no authority to sell. On its face, it is to satisfy the plaintiff; and whenever that has been done, no further sale can be made. So in a case where a sale
 
 cannot
 
 have that effect, there cannot be a sale at all. If, therefore, from the beginning, the plaintiff was to have none of the money
 
 arising
 
 from this sale, from the beginning also there was no power to sell.
 

 If then, from the nature of an equity of redemption, the proceeds of the sale of it, cannot, or ought not to be applied, in the particular case, to the execution debt, the proper inference is, not that the statute alters the nature of the
 
 *56
 
 writ, and abrogates its ordinary uses, but, rather, that such a case is wholly out of the act’; not that the money raised, if properly raised, shall not go to the plaintiff, or that he, by the act of receiving it, becomes reciprocally indebted to his debtor in an equal sum; but that the interest sold, is not legally the subject of sale.
 

 If it were, a Court of law could not adjust the claims of the parties. This case states, indeed, that the judgment was for the mortgage debt. But how can that be ascertained at law ? It is not stated as a fact agreed; though if it were agreed, it could not alter the jurisdiction. It is stated as a fact proved. Now, it is incapable of proof. In this particular instance, the mortgagor may know, that he is not entitled to any equitable deductions, and that the judgment debt is the real debt. But if the mortgagee had taken possession, and received the profits, no credit could be given for them; because in a Court of law, the land belongs to the mortgagee; and the judgment would be according to the bond. If, on the trial, the Court was incompetent to take those accounts; the sale under execution does not render it less so. At law, no deductions can now be made, except for-the money produced by the sale, without contradicting the record, and making it incongruous on its face. Besides, the mortgagee may have been at expense in getting into possession; or paid taxes; or made other advances upon an agreement to tack; or have other judgments which can be tacked without agreement; of none of which can notice be taken at law.
 

 If, indeed, the effect of the statute were to deprive the defendant of relief in equity, those inquiries would necessarily be gone into at law; for there must be a remedy for every wrong. But a Court of Equity is the proper tribunal to determine, what effect a sale like this is to have, as well since the statute as before. In that Court, we think it clear, it must be held to have no effect, upon any construction which can be there put on the statute.
 

 The absurd anomaly, arising out of such a sale, from the necessity at law of applying the money to the execution for the mortgage debt, goes far to show that the legislature did not observe that the case came within their words.
 
 *57
 
 That the sale should cause an immediate necessity for the parties to resort to a Court of Equity to correct an injustice by that very act of sale, and yet that such a sale should be intended, is not credible.
 

 But it is very clear to the Court that the situation of a mortgagee is not within the mischief intended to be remedied. The object of the act is not to foreclose mortgages, and make them more effectual as securities to the mortgagee, but to subject the equitable interest of the mortgagor to the satisfaction of those of his creditors who could not before get a security on the premises. Authorizing a sale of an equity of redemption, implies that the thing pledged is worth more than the debt; and the act of making such a pledge, and thereby withdrawing the thing from execution, is regarded, in a degree, as a species of fraud on the general creditors, whose executions are thereby hindered. For such creditors the provision must, at least in the main, have been meant. Unless for cases of that sort, can it be supposed the act would have been passed at all ? The mortgagee is not an object of that policy. He has, of his own provision, a distinct, specific, and adequate security. It is to be remembered, that he does not sell the land, but the right in equity to redeem. Why should he be allowed to extinguish that right, instead of proceeding on his security ? How can he sell it, if less than the debt be bid
 
 1
 
 For in that case, if the money is to be applied to the execution, the mortgagor gets nothing for the equity; and there can be no sale without a price. But if more is given it is still the price of the equity, and the mortgagor may look either to the creditor or the land to reimburse to him the whole of it; and necessarily that demand, and an account of the mortgage debt, is to form the subject of litigation in a Court of Chancery. Upon the idea that the sale is valid, the only relief to the mortgagor would be a decree for the money, the mortgage being foreclosed. But as has been already said, the statute looks to a different state of things. It supposes the equity of redemption to be
 
 assigned
 
 by the sale, and not
 
 extinguished.
 
 We do not say, that a mortgagee may not buy at a sale by another creditor. Indeed we take it for granted that he may;
 
 *58
 
 although the effect is to unite the legal and equitable estates, and thereby merge the latter. That is a consequence of dealings within both the words and spirit of the statute, and whatever hardships may grow out of them, they must be borne, if there be no fraud or actual oppression. It may be also that the mortgagee may sell for any other debt except that secured by the mortgage; but that is not entirely clear. His knowledge of the encumbrance, and the igijorance of others, would afford a strong temptation to sell oppressively, that he might buy the
 
 estate
 
 at a sacrifice; and the relation of the parties
 
 forbids the
 
 making an advantage, for the very reason, that it affords the opportunity for making it. It is true the act extends to such a case; but it is a principle of equity to restrain or relieve the iniquitous use of the most undoubted legal right; and it is one of its first principles, in all cases of sales, to ascertain previously what is the actual interest to be sold, that the competition may be fair, and an adequate price had. Upon that ground, a sale under execution against one partner is enjoined, until an account be taken, and his separate interest shown. Perhaps for this reason, the second section of the statute will be found to be practically impolitic throughout, and that it would be better to apply in the first instance to a Court of Equity to redeem, or to sell the estate; and that, at any rate, it will be the duty of the Court to treat a purchase by the mortgagee at an under value as a further advance of money on the security of the estate. But upon those points, the present question does not call for an opinion; and it is not intended to express any. They are alluded to, only for the purpose of showing that, if two opinions can be entertained upon them, a most cogent argument arises against a construction, that a sale may be made at law for the mortgage debt. It would not only open the door for oppression, and invite to it, but such a sale is in every case
 
 against the contract of the parties,
 
 as understood in a Court of Equity. That Court relieves even against agreements, between persons in a fiduciary relation, upon a principle of policy, to prevent frauds, much more ought it to protect one person, in the power of another, from loss by the use of a legal advan
 
 *59
 
 tage, contrary to the agreement. The contract here was, that the mortgagee might redeem. Will the Court allow the mortgagor to cut him off from that equity at short hand? Such a position cannot be tolerated, nor could the legislature have intended it. The act did not mean to interfere with
 
 the
 
 stipulations of the parties, as they might affect them, either at law or in equity. It designed to prevent a mischief to other persons, who were stranger's to those stipulations. A sale for a debt uncertain in its amount, and upon which a clear legal title is not passed to any bidder, but the mortgagee himself,
 
 must
 
 be in every case a disadvantageous sale; such an one as a mortgagee ought not to make. If he is not satisfied with his security, the mortgagor’s person and other property are open to him. Let him resort to them; but against the estate on which he has taken a security, he ought not to act, but upon the footing of that security, and according to its terms in their established sense.
 

 Many cases might be stated as strong instances of the bad faith of such a course. There is an act passed in 1822, (Taylor’s
 
 Rev. ch.
 
 1172,) which is a part of this system, and to be considered in connexion with the act of 1812. By it the legal right of redemption may be sold; that is to say, the right of paying the debt before a forfeiture. Suppose a debt due upon several bonds payable on different days, and the whole secured by a mortgage, in which the day of payment is that on which the last bond falls due. Is it possible that the creditor can foreclose by execution for the debt in the first bond, before the others become payable ? It cannot be supposed, the debtor would have given a mortgage with a shorter day of payment; and yet the creditor wmuld defeat him in the very point which formed the inducement to the deed.
 

 The confusion too, in which the Court would be involved, would be inextricable. In the case just stated, suppose upon the judgment for a part of the mortgage debt, a sale of a part of the mortgaged property. By what rule is the burden on the respective parts to be adjusted ? Upon what principle is the redemption of the one part to be refused, and the other decreed ? Or, however large the property,
 
 *60
 
 must the whole equity of redemption, as an entire thing, be sold for a trifling debt, and thus aggravate the hardships to the utmost extent ?
 

 But it may be said, third persons may purchase, and be deceived. Such a purchase, at a sale purporting to be of the land, and without notice of the mortgage, stands on its own distinct equity. At a sale, under the statute, that is, of the equity of redemption, there can be no want of notice; and the purchaser must take care to inquire for the evidences of the debt. At all events, the injury could not be great; for the land would at least be a security for his purchase money.
 

 These reasons force the conviction on our minds, that a sale by the mortgagee, for the debt secured by mortgage, can derive no sanction from the statutes. The cases within its purview are those, in which the application of the money raised upon the execution, to that debt, (as is necessarily the case at law) does not of itself alter the encumbrance, and thereby render the equity of redemption more valuable than it was, the instant before, at the sale. This cannot be avoided, unless by treating such a sale as substantially one of the land itself, which none can pretend the statute allows. We think, in fine, that the act is to be read, as if such sales by the mortgagee were expressly excepted.
 

 Consequently the defendant has paid nothing, much less the whole debt. The payment, which, at law, has been apparently made, will be treated properly, when he shall apply for redemption to that tribunal, which can strip the •case of its formal legal vestments, and administer exact justice according to real rights, which can there be seen.
 

 It is gratifying to be confirmed in the conclusion arrived at upon general principles applied to the provisions of the statute, by an adjudged case in point, which has been since found. In
 
 Atkins
 
 v.
 
 Sawyer,
 
 1 Pick. Rep. 351, the Supreme Court of Massachusetts held, upon a similar statute, that for the debt secured by mortgage, the mortgagee could not sell the equity of redemption, although another creditor might, and also the mortgagee for another debt. To a bill for redemption, the sale and statute were
 
 *61
 
 pleaded, but the plea was overruled, and the mortgagor let in to redeem.
 

 Per Curiam. Judgment affirmed.