ROWLAND HARDWARE AND SUPPLY COMPANY ET AL.
v. R. E. LEWIS ET AL.

(Filed 11 April, 1917.)

**1. Mortgages, Chattel—Levy—Judgments.**

A sale under levy of an execution on personal property subject to a prior registered, existent, and unpaid mortgage is a nullity.

**2. Equity—Estoppel in Pais—Mortgages—Judgments—Judicial Sales.**

In order to create an estoppel by matter *in pais* the other party must be put to some disadvantage, and a mortgagee under an existing registered and unpaid chattel mortgage is not estopped to assert his rights because he participated in the bidding and received possession of the property at an execution sale thereof, under a judgment obtained after his lien by the prior mortgage has attached thereto, where his rights under the mortgage were known and recognized at the time of sale.

**3. Judgments—Mortgages—Execution—Trusts—Statute of Uses—Statutes.**

Revisal, sec. 629, subsection 4, permitting execution under judgment against personalty held in trust, does not apply when the trustee holds under a mixed trust, as where the instrument is existent and the debt it secures remains unpaid; but only where the naked title is outstanding with the right of the *cestui que trust* to demand it as a matter of right under the Statute of Uses.

**4. Constitutional Law—Judicial Sales—Mortgages—Equities—Courts.**

Article IV, section 1, of our Constitution does not affect the rights of a prior lienor by a registered chattel mortgage in favor of a judgment creditor who has sold the personal property by execution under a judgment subsequent to the mortgage lien, or give the creditor a right to levy his execution instead of pursuing the equitable remedy.

**5. Judicial Sales—Mortgages—Purchasers—Destroyed Property—Negligence —Damages.**

Where chattels are sold under execution of a judgment, subsequent to the lien of a prior registered mortgage, and the mortgagee has become the successful bidder under the mistake that his debt was first to be paid; and it appears that the value of the property was insufficient to pay his debt; he is not liable to the judgment creditor for damages for the destruction of the property thereafter by fire, while in his possession, in the absence of evidence of negligence on his part.

CLARK, C. J., dissenting; BROWN, J., concurs in dissenting opinion.

CIVIL ACTION, tried before *Winston, J.,* and a jury, at November Term, 1916, of ROBESON.

The action was brought by plaintiff against R. E. Lewis, sheriff of Robeson County, C. T. Pate & Co. and C. T. Pate, to recover the $725,

the amount bid by C. T. Pate, acting for the firm of C. T. Pate & Co., of which he was a member, at a sale under the execution hereinafter described.

The material and undisputed facts are as follows:

1. Plaintiff obtained a judgment against one R. T. Gaitley, who was and is insolvent, for $1,302.

2. Execution was issued upon this judgment and levied upon personal property, on nearly all of which defendants C. T. Pate & Co. and the International Harvester Company held chattel mortgages for more than $3,000, these mortgages having been taken and registered before the rendition of plaintiff's judgment, and nothing having been paid thereon. The mortgage of the International Harvester Company has since been sold and assigned to the Pates. The small part of the property levied upon, which was not embraced in these mortgages, was valued by the jury at $86.

3. The property levied upon was worth, in all, $1,000—less than one-third the amount due upon the mortgages, which mortgages constituted liens upon the property superior to the lien of plaintiff's judgment.

4. The property levied upon was offered for sale by the sheriff "subject to liens and mortgages"; and he so announced publicly to the bystanders before the sale. Defendant Pate became the purchaser at $725. Pate's bid, as he alleges, was based upon a misconception of the sheriff's announcement, he thinking that it meant that the proceeds of sale would be first applied to his mortgage, and knowing that his mortgage debt was far more in amount than the property was worth, he bid for it under the belief that his bid would be credited upon his mortgage, and he would not have bid but for this understanding.

5. After the sale, when defendant Pate found out that he had misunderstood the terms of sale, he tendered the property to the sheriff and requested him to resell it. This the sheriff was willing to do, but the plaintiffs would not consent, saying that "Pate is a responsible man, and leave it as it is," or words to that effect.

6. The property bid for by Pate at the sale was delivered to him.

7. Some weeks after the sale the mules sold were burned to death without any apparent negligence on the part of any one.

8. This suit was brought to compel defendant Pate to pay his bid.

9. The mortgagor was in possession of the property when the levy was made by the sheriff.

The court held that plaintiff was not entitled to recover anything, except the value of such property as was sold by the sheriff and was

not embraced within the mortgages of defendant C. T. Pate & Co., and the jury having found this value to be $86, judgment for that amount was entered in favor of plaintiff, who excepted and appealed.

*McLean, Varser & McLean for plaintiff.*
*H. E. Stacy, McIntyre, Lawrence & Proctor for defendants.*

WALKER, J., after stating the case: At common law no property but that to which the debtor has a legal title is liable to be taken under execution against him, and where this rule has not been changed by statute, an equity of redemption in chattels subject to a mortgage cannot be levied upon and sold by creditors of the mortgagor under execution. This is the prevailing rule, and is applied rigorously where the debt secured by the mortgage is past due and the mortgagee has the right of possession, which is the case here. 17 Cyc., 961, and Freeman on Executions, secs. 116 and 117, where the question is fully discussed and the various views collated, but all culminating in this statement of the law: The mortgagee being entitled to the possession as against the motgagor, no creditor of the latter can acquire any right which his debtor has not; and no right of possession can be acquired by levying a writ against one who is without such right; and, finally, that it would very seriously impair the rights of the mortgagee if the property could be taken from his hands for an indefinite period in order to subject to execution an equity of redemption which might be of no value whatsoever. Freeman on Executions, sec. 117. Several reasons have been assigned for the rule. One which applies in this State grows out of the common-law principle that a mortgage conveys the legal title and is not to be regarded as merely a security for the debt with the right of possession in the mortgagor. 17 Cyc., 961. "It was a principle of the common law, steadily maintained, that an equitable interest in chattels could not be sold under execution." *Yeldell v. Barnes,* 15 Mo., 434. An able judge has said: "I do not know of any case in which the court has considered an execution at law as binding an equitable interest. The idea is inadmissible." *Hendricks v. Robinson,* 2 Johns Ch., 312. And a text-writer says: "If there is no such statutory provision, an officer cannot levy upon personal property which is mortgaged, whether in possession of the mortgagor or mortgagee, even if the mortgage is not due, unless it contains an express stipulation permitting the mortgagor to retain possession for a definite period; nor even then if that period has elapsed. Notwithstanding a levy upon the property in the mortgagor's possession, the mortgagee retains his right of taking possession." Hermon on Executions, p. 150, sec.

118. In some of the States the common-law rule has been abrogated, but even where this has been done it is held that where the debt has not been paid and the right of possession, as here, is in the mortgagee, the levy cannot be made. In a few cases, decided in other jurisdictions, it is held that while a mere equity of redemption is not, of itself, subject to execution, when such equity is joined with the right to remain for a definite time in possession of the property mortgaged, the mortgagor has an interest, which may be seized and sold under an execution at law. Freeman on Executions, p. 482. But the rule seems to be well settled that after default by the mortgagor, no levy can be made, as then the mortgagee's right to the possession has fully accrued, and it cannot be taken from him under process against the mortgagor.

But however the law may be elsewhere upon this important subject, it has long since been settled in this State, and uniformly to this date, by our decisions, that such an equity of redemption is not subject to levy, and in the classification of the courts upon the question we are assigned to the large class which holds that a levy of an execution upon an equity of redemption under a chattel mortgage cannot be made, and we should, of course, follow our own rulings. The following cases will show the decided trend of our decisions.

"That section (now Revisal, 629, subsec. 3) subjects equities of redemption *in land only* to execution sale. The same interest in chattels is left as at common law, and can be subjected to satisfaction of an execution only in a court of equity." *Harrison v. Battle,* 16 N. C., 538; *Burgin v. Burgin,* 23 N. C., 160; *Camp v. Coxe,* 18 N. C., 52; *Allison v. Gregory,* 5 N. C., 333.

"The second section of the act of 1812, which authorized the sale of an equity of redemption, is confined to a mortgage of land, and therefore this case (personal property) is not within that clause." *Thompson v. Ford,* 29 N. C., 418.

"The equity of redemption in a mortgage of slaves is not in law subject to execution. The sheriff had no authority to levy on it; therefore, he could transfer no title or interest to the purchaser under his sale. The equity of redemption in land is liable to an execution by force of the act of Assembly, but the redemption in slaves, as in other personal estate, is not embraced by the act." *Whitesides v. Allen,* 22 N. C., 153.

"In the absence of statutory regulation, the interest of a mortgagee in personal property while the mortgagor remains in possession, having also an interest therein, is not subject of levy by direct seizure, either under attachment or execution." *Bowen v. King,* 146 N. C., 390, citing Freeman on Executions, secs. 118-184; Am. and Eng. Enc. Law, 974.

And 17 Cyc., p. 957, says: "The general rule was well established that in the absence of statute a debtor's equitable estate in real or personal property, although accompanied with possession, could not be seized and sold under a *fieri facias,* and it was necessary for the judgment creditor to go into equity to subject such interest," citing *Sprinkle v. Martin,* 66 N. C., 55; *McKeithan v. Walker,* ibid., 95, among many other cases. See also, *Burgin v. Burgin,* 23 N. C., 160; *Allison v. Gregory,* 5 N. C., 333.

Justice *Barbour,* for the Court, in *Van Ness v. Hyatt,* 13 Peters, 294 (10 L. Ed., 170), said: "We have already seen that by the common-law an equitable interest, such as an equity of redemption, is not liable to execution. This would be decisive of the case unless there should be found to be some legislation, or some course of authoritative judicial decision, which had so far modified the common law by engrafting upon it the principles of the court of equity in relation to mortgages as to change the rule in this respect. It is not pretended that any legislative act has produced this effect, nor is there any course of judicial decision which does."

But the plaintiffs contend that Pate & Co. are estopped because they were present at the sale by their agent, a member of the firm, and made no objection to it, and for this position they rely upon the following authorities: *Lentz v. Chambers,* 27 N. C., 587; *Mason v. Williams,* 66 N. C., 564; *Rice v. Bunce,* 8 Am. Rep. (Mo.), 129; *Biggs v. Brickwell,* 68 N. C., 239; *Fleming v. Barden,* 126 N. C., 450; *Bird v. Benton,* 13 N. C., 179; *Governor v. Freeman,* 15 N. C., 472. The principle, they say, is thus stated in *Rice v. Bunce, supra*: "The defendant, who had an equitable interest in one-half of a lot of land, was present when the lot was offered for sale at auction, but gave no notice of his claim, and entered the list of bidders. The court held that he was estopped from afterwards asserting his title against the purchaser." And again, in 16 Cyc., 764: "If the owner of property, with knowledge of the fact, bids on it at a judicial sale without giving notice of his title, he will be estopped thereafter to assert his title or contest the validity of the sale to the prejudice of one who has acted in reliance on his conduct and in ignorance of the facts."

We think it obvious that this position cannot be successfully maintained. The cases of *Lentz v. Chambers, Mason v. Williams,* and *Rice v. Bunce,* and quotations from Cyc., relate to a very different matter. There the owner of the property, or an interest therein, who was present when the sale was made, was estopped because he did not disclose his ownership and permitted some one else, relying on his silence, and believing, therefore, that there was no adverse or hostile claim, to bid

in the property. He is not permitted to assert his interest afterwards as against the innocent buyer of the property and to his prejudice, because he was silent when he should have spoken, and now the law will not hear him when he should be silent. He is equitably estopped from being heard and asserting his claim to the property. But that is not the case here. No third party bought the property, but the mortgagees themselves, who held the liens and had the right to the possession, were the purchasers. This was not a purchase by a third person, or stranger, who had bid at the sale and been misled by the owner of the property, and, besides, the levy and sale were utterly void and a nullity, while in the cases cited by the plaintiffs the sales were valid, one or more made under the exercise of a good power of sale and the others by sheriffs under valid executions and levies. The distinction between the two cases is perfectly manifest.

The doctrine of equitable estoppel does not apply here. The plaintiffs have not been harmed or prejudiced, for they cannot be said to have lost something which the debtor did not have for the purpose of levy and sale. They can still pursue their remedy against his property if he has any subject to levy and sale, for there has been no satisfaction of their execution. If defendants had not bid at the sale, or had not been present, the sale would still have been void and nothing would have passed to the purchaser or to the plaintiffs, for from nothing it is said that nothing comes (*ex nihilo nihil fit*). Plaintiffs have not been hurt. "The representation must have been acted upon to the damage of the party acting. It is not enough that the representation has been barely acted upon, for if no substantial prejudice would result by admitting the party who made it to contradict it, he will not be estopped." Bigelow on Estoppel, 27; *Boddie v. Bond,* 154 N. C., 359: "The law does not favor estoppels, and as to estoppels by matter *in pais,* it may be said that unless a person has induced another by representations or declarations to alter his position injuriously to himself, he will not be estopped. The fundamental principle on which the doctrine of estoppel rests is an equitable one—a principle which is intended to suppress fraud and to compel just and fair dealings between all. On the principle of fair dealing and equity, can it be held that one should be estopped to protect his rights in a matter because of his conduct in reference thereto and upon which another has acted, but without prejudice to his rights and interests. It cannot be said, with consistency, that a man has taken advantage of his own wrong where his statements have not damaged or injured another." *Rainey v. Hines,* 120 N. C., 376; *Lovelace v. Carpenter,* 115 N. C., 424. Nor is this the case of an irregular execution, where the irregularity can be

waived by conduct, as was done in one of the cases cited by plaintiffs, because here the levy was void—the property or interest not being the subject of levy and sale.

Some of the cases hold that the mortgagee of chattels, default of the mortgagor having occurred, is entitled to the possession, and when the sheriff levies on the property he is guilty of an unlawful conversion which entitles the mortgagee to sue him in trover for the same if he takes possession of the property. There can be no doubt that the sheriff levied on the equity of the mortgagor after the latter's default, as the debt was past due. The officer announced that he would sell subject to the mortgages, which was nothing, therefore, but a sale of the mortgagor's interest or equity.

The last position taken by the plaintiffs is that the levy and sale were valid under Revisal, sec. 629, subsec. 4. At common law an equity of redemption in land was not subject to levy and sale under execution, and was first made so in this State by Acts of 1812, ch. 4, sec. 2, and this was true also as to the trusts mentioned in Acts of 1812, ch. 4, sec. 1, which changed the law in this respect. The act refers only to an equity of redemption in realty and not to such equity in personalty. The two provisions will be found in the following order in the successive statutes, trusts being mentioned first and then equities of redemption: Acts of 1812, ch 4, secs. 1 and 2; Rev. Statutes of 1836-7, ch. 45, secs. 4 and 5; Rev. Code, ch. 45, secs. 4 and 5; Code of 1883, ch. 10, sec. 450, subsecs. 3 and 4, and secs. 451 and 452. These sections are all substantially the same, and, as originally passed, they were in these words:

"1. Where any person shall be seized or possessed of any lands, tenements, rents, and hereditaments, or any goods and chattels in trust for any person against whom any execution or process shall be issued, such estate may be levied on and sold under such execution or process; and the purchaser thereof shall hold and enjoy the same freed and discharged from all encumbrances of the person so seized, or possessed in trust, as aforesaid.

"2. The equity of redemption, and the legal right of redemption, in lands, tenements, rents, or other hereditaments which shall be pledged or mortgaged shall in like manner be liable to any execution or process sued out on any judgment against the mortgagor or bargainor."

Section 1, mentioned above, and upon which plaintiff relies, has been construed by this Court in numerous cases as not applying to any trusts in property, real or personal, except those which are unmixed, or what are called simple trusts, where the trustee holds the legal title alone for the *cestui que trust* and for no one else and for no other

purpose. It is a passive instead of an active trust, when he has nothing to do, or no duty to perform except to hold the legal title as already stated. It, therefore, excludes an equity of redemption, and a contract to convey land, where anything remains due upon the debt, because the trust is a mixed one in these cases, as the mortgagee in the one case and the vendor in the other holds in trust for the purpose of securing the money due, but when this is paid he holds nothing but the naked legal title. The section, therefore, refers only to trust estate where the *cestui que trust* may call for the transfer of the legal title to him at any time without doing more than demanding the same, and if any one other than the *cestui que trust* is beneficially interested it is not a simple one and is not subject to levy under execution.

*Chief Justice Ruffin* thus states the legal effect of the statute, in *Battle v. Petway*, 27 N. C., 576: "The act of 1812 did not mean to change the nature of trusts, the relation between the trustee and *cestui que trust,* or the rights of the latter against the former. The sole purpose of it was to render the interest of the *cestui que trust* liable at law, as it was before in equity, for the debts of the *cestui que trust* in certain cases, by transferring by a sale on execution against the *cestui que trust* the legal estate of the trustee, as well as the trust estate of the debtor. It is a necessary construction of such a provision that it was not intended to embrace any such cases as those just adverted to, in which the trustee could not voluntarily convey to the debtor without incurring a breach of trust to other persons with whose interests he is also charged. As was said in *Gillis v. McKay,* 15 N. C., 172: 'The principle is that the legal estate is not to be divested out of the trustee unless it may be done without affecting any rightful purpose for which it was created; and, therefore, that if others had an equity in the same property, that is, in the debtor's particular share, the act did not operate on it.'" And again the same learned judge said in *Forbes v. Smith,* 43 N. C., 30: "Although the act of 1812 makes trusts in personal property liable to execution against the *cestui que trust,* yet it is settled that the case of a trust of personal chattels for one for life and then in trust for others is not within it, as the trustee's legal title must be preserved entire for the security of those entitled under the ulterior limitations. *Dick v. Pitchford,* 21 N. C., 480; *Battle v. Petway,* 27 N. C., 576. But although an execution will not reach the slaves, yet they and also the money, or rather Shackleford's beneficial interest in those funds as his equitable property, may and ought to be sold under a decree of this Court." And also in *Frost v. Reynolds,* 39 N. C., 494: "The interest of a vendee of land, where the contract rests in articles for a conveyance when the purchase money shall have been paid, is not the

subject of sale under execution at law, while the purchase money or any part remains unpaid. After the payment of the price, it was held in *Henderson v. Hoke,* 21 N. C., 119, that it may be sold as a trust estate, within the act of 1812. But until payment there is not a pure trust for the vendee, upon the sale and conveyance of which it was the purpose to displace the legal estate. Neither is it an equity of redemption, properly speaking."

The point is tersely and clearly stated by *Pearson, J.,* in *Williams v. Council,* 49 N. C., 206: "It is settled by many cases that the act of 1812 only applies to a pure, unmixed trust, so that the purchaser of the trust can acquire the entire legal estate without prejudice to the rights of third persons."

*Judge Battle* states in *Turnage v. Greene,* 55 N. C., at p. 65, that the trust must be simple, that is, of a kind where the *cestui que trust* has an absolute and perfect property, as is known to the law (in the thing), and, can call for the legal estate at his will."

*Chief Justice Pearson,* in *Hinsdale v. Thornton,* 75 N. C., at p. 383, shows clearly the meaning and purpose of the statute by putting the case of a contract or bond for title, when he says: "where one buys land and the contract complies with the statute, and is put in writing, he acquires an estate in equity, and the vendor holds the legal estate in trust for himself to secure payment of the purchase money, and then in trust for the vendee. But although the vendee acquires an estate in equity, it is decided that his equitable estate is not a trust subject to sale under *fi. fa.* until the trust in favor of the vendor is satisfied by payment of the purchase money in full, when it becomes an unmixed trust estate, to use the words of the cases."

Justice Dillard, in *Love v. Smathers,* 82 N. C., at p. 372, is equally explicit in the same construction of the statute, when he says: "A trust estate of a debtor in land could not be levied on and sold under execution until the act of 1812, nor under that act if it was to be raised by construction of a court of equity by reason of fraud, or being an expressed or implied trust in an honest transaction, unless the debtor at the time of the sale was in such situation as to have the legal title decreed to him if he were to sue for it. The debtor, being in a condition to call for the legal title, is regarded as having the absolute beneficial property, as much so as if he had the legal estate; and hence in such case the act, instead of requiring the creditor to go into equity as formerly, allowed the trust estate to be sold by execution, and gave to the sale and sheriff's deed the legal operation to take the title out of the trustee and vest it in the purchaser." See, also, *King v. Rhew,* 108 N. C., 696. A simple trust is well defined in *McKenzie v. Sumner,* 114

HARDWARE CO. *v.* LEWIS.

N. C., 428, 429; *Turnage v. Greene,* 55 N. C., 63, where it is said that the simple trust is where property is vested in one person upon trust for another, and the nature of the trust not being prescribed, or stated, by the settler, is left to the construction of law, and the *cestui que trust* then has the right to be put into actual possession of the property, and the right to call upon the trustee to execute a conveyance of the legal estate as the *cestui que trust* directs, this being a valuable part of the right of alienation (*jus disponendi*). In such a case the *cestui que trust* is an absolute equitable owner, and the trustee has nothing but a bare, naked legal estate, unaccompanied with a single specified duty, and there being no ulterior limitation or other beneficial interest to protect. Lewis on Trusts, 18. And so it was said by this Court of the gift of stock that "A present right to the whole profits, as well as the absolute, ultimate dominion of the bank stock, are given to the legatees, and they are therefore entitled to have a transfer of the stock made to them. The rule would be different, and the *centui qui trust* would not be entitled to call for the legal estate if from the nature of the trust their ownership were not immediate and absolute, and it would defeat or put it into their power to defeat or endanger a legitimate, ultimate limitation of the trust property." *Turnage v. Greene,* 55 N. C., 63.

We have reviewed the cases upon this question, as there seems to be some misunderstanding as to the true meaning of the statute in regard to levies upon and sales of trust estates under execution, and the importance of a stable and uniform construction is so great as to call for a final settlement of the question, if it has not already been definitely closed. It is true, as argued by counsel, that a mortgagee, in a sense, holds in trust for the mortgagor, but not in the sense of this statute, as it is a mixed trust, and the mortgagor cannot call for the legal estate until he pays his debt, and the trust is simplified. The statute declares, too, that the purchaser of a trust estate at execution sale "shall hold and enjoy the same freed and discharged from all encumbrances of the person so seized or possessed in trust." Surely it did not mean to destroy the rights of the mortgagee by a sale of the mortgagor's estate. It meant only to merge the naked legal and the trust estate into one. The able and learned argument of Mr. Dickson McLean has been fully considered, but we are compelled to follow the unanimous opinion of our predecessors, that the interest of the mortgagor of a chattel, the secured debt not being paid, cannot be sold under execution, and, consequently, that the sale in this case being void, there is no estoppel raised by the purchase of the property by the defendants. "The law only sells estate under its process, and not the chances of an estoppel." *Badham v. Cox,* 33 N. C., 456.

It may further be said that if the Legislature intended that an equity of redemption in chattels might be sold under execution it would have so declared in plain language, as it did in the case of real estate mortgages. But a long line of decisions in this State has settled the question.

It is suggested that a change of the law was effected in 1868. The Constitution of that year abolished only "the distinctions between actions at law and suits in equity and the forms of all such actions and suits." Const., Art. IV. It did not abolish the principles of law or equity, which still survive in full vigor, but are enforced by "one form of action denominated a civil action." Trover, replevin and detinue, as forms of actions, are abolished, but not the torts for which they were the appropriate remedies. It has been held that "The abolition of the distinctions between actions at law and suits in equity, and the forms of all such actions and suits, does not destroy equitable rights and remedies, nor does it merge legal and equitable rights." Connor and Cheshire on the Constitution, p. 147. *Rudisill v. Whitener,* 146 N. C., 403; *Ely v. Early,* 94 N. C., 1; *Boles v. Caudle,* 133 N. C., 528; *Morisey v. Swinson,* 104 N. C., 555.

There is a marked distinction, as the authorities show, between abolishing the forms of actions and destroying the principles which they were intended to enforce, and, besides, the abolition of forms of actions does not affect the question as to what can be levied on and sold under an execution.

The common law prohibited the sale of an equity of redemption in a chattel for substantial reasons, and no statute of this State has ever authorized such a sale and thereby changed the common law. This is true according to every decision of this Court upon the question, some of them having been decided upon transactions occurring since 1868. The sale being void, the doctrine of estoppel does not apply. The cases relied on by plaintiff are those where the sales were lawful, but the owner of the legal or equitable estate stood by and permitted his interest to be sold, under a valid power, without disclosing his right or objecting to the sale.

The case was correctly decided by Judge Winston in all its phases, and we must, therefore, declare that there is no error in the record.

No error.

CLARK, C. J., dissenting: The defendant Pate bought certain personal property at execution sale against one Gaitley on which Pate held chattel mortgages. The defendant Lewis, the sheriff, delivered the property to Pate, in whose possession it was destroyed by fire. This is a

proceeding to compel Pate to pay the price bid at the sale, and he seeks to defend upon the ground that personal property could not be sold at execution sale because there was a mortgage upon it.

The sale by the sheriff of the personal property of the execution debtor was valid under Revisal 629, sec. 1, which provides that: "The goods, chattels, houses, lands, tenements, and other hereditaments and real estate" and "effects of the judgment debtor, not exempt from sale under Constitution and laws of this State, may be levied on and sold under execution." The personal property exemption of the judgment debtor had been laid off before the sale.

Under the broad words used in the statute there should be no question that this property was subject to sale, and that the title passed to the purchaser. The judgment debtor was the owner of this property subject only to the encumbrance of the chattel mortgages held by the purchaser himself to secure his indebtedness. It is true that under the long abolished system which made a distinction between equity and law there had grown up a series of rulings that in a mortgage the legal title passed to the mortgagee and that the mortgagor held only an equitable interest. The reason and the sole foundation for this was abolished by the Constitution of 1868, which destroyed at one blow the distinction by providing Constitution, Art. IV, sec. 1, that the "Distinctions between actions at law and suits in equity, and the forms of all such actions and suits, shall be abolished." There was left, therefore, no reason why the interest of the true owner, the mortgagor, should not be subject to sale under execution at law, for there was thenceforward no other kind of judgment or execution, since there could be no other form of action.

The statute makes no exceptions as to the sale of any interest of the judgment debtor in any property, "except such exemptions as are allowed under the Constitution and laws of this State." The continuation of the ruling made prior to the Constitution of 1868 in regard to equitable interests, or equity of redemption, being exempt from sale has no authority under our Constitution or statutes now to support it. There is no reason to perpetuate such abolished distinctions.

The provision in Revisal 629 (3), for the sale of "the equity of redemption and legal right of redemption in lands, tenements, rents, or other hereditaments" is not a prohibition of the sale of personal property on which there is a mortgage. It is true that when that statute was passed in 1812 the courts, adhering to the distinction then existing, held that it did not extend to the sale of personal property. But if such distinction should have been drawn even then, notwithstanding the evident intent of the statute, there is no reason for the continuance

of such ruling, since the Constitution of 1868, which was intended to simplify procedure by destroying all technical distinctions based on the former divorce between law and equity.

This subsection 3 of Revisal 629, is brought forward from the act of 1812, but it should now be construed in the light of the constitutional provision of 1868 and not in the light of the distinction between law and equity which existed prior thereto. Besides, it must be noted that there is in it no prohibition of the sale of the equity of redemption in personal property. The judicial gloss put upon the statute at the time when the distinction between law and equity existed was merely negative, and it did not extend the power of sale to an equity of redemption in personal property. The broad words of Revisal, 629, subjects to execution sale the "property, estate, and effects of the judgment debtor not exempted from sale" and specifically enumerates "goods and chattels, estates, equity of redemption," and every other kind of property that could be thought of. There is no reason, in the nature of things, why real estate on which there is a mortgage shall be subject to execution, but that personal property under mortgage shall not be, and that there must be "a proceeding in equity" to subject the latter to payment of debts, because that was necessary prior to 1868, when such proceeding has now been utterly abolished for forty-nine years.

But even taking the restricted technical view set up by the defendant Pate, still this sale was valid under Revisal 629 (4), which provides that sale under execution may be had of any "goods and chattels of which any person may be seized and possessed in trust for the debtor." The chattel mortgages executed by Gaitley to Pate and his assignor subjected the property to the payment of the indebtedness named in the chattel mortgages. These liens created the relation of trustee and *cestui que trust* between Pate and the judgment debtor, Gaitley. *McLeod v. Bullard,* 86 N. C., 210; *Whitehead v. Hellen,* 76 N. C., 99. Pate, as mortgagee held an interest in the property which made him a trustee for the benefit of the mortgagor Gaitley and the interest of the latter, under the said section 4, could be sold for the benefit of the judgment debtor.

There has been no decision in this Court, till now, contrary to the above view. Revisal, 629, was enacted in lieu of chapter 45, Revised Statutes. There were several cases under the old statute which held that property conveyed to a tustee upon a mixed trust could not be sold under execution, but that property in which the trustee had only a bare naked trust could be sold under the language of the former statute, which is now subsection 4 of Revisal 629. *Thompson v. Ford,* 29 N. C., 418; *Battle v. Petway,* 27 N. C., 576.

Pate as mortgagee was trustee for the benefit of Gaitley. The form of the mortgage does not change the fact that the mortgagee held the property, after payment of his debt, under a naked trust for the benefit of the mortgagor whose interest was sold at the execution sale.

Besides the above reasons, Pate is estopped to attack the validity of the sheriff's sale both by the notice given at the sale that the property was sold subject to the chattel mortgages and by his purchase at such sale. The sheriff stated in Pate's presence that this property was "sold subject to all liens, only the interest of Gaitley being offered for sale." Other persons bid on the property, but the defendant Pate outbid them all. His bid was accepted and the property was delivered to Pate and removed by him. While the property was in his possession the most valuable part of it was destroyed by fire. If other bidders had bought and taken possession there would have been in all probability no such loss. By reason of the conduct of Pate and the subsequent fire, the parties cannot be not put in *statu quo,* and the judgment creditor should not bear the loss.

There are many cases which hold that the purchaser at the sheriff's sale is estopped by his conduct to deny the validity of the sale. In *Lentz v. Chambers,* 27 N. C., 587, a slave, the property of the plaintiff, was sold under execution on a judgment against the former owner of the slave. The Court held that the sheriff had no right to sell the slave under execution; as it was the property of another, but that the plaintiff was estopped to deny the validity of the sale because he was present at the sale, made no objection thereto, and endeavored to borrow money to purchase the slave himself.

In *Mason v. Williams,* 66 N. C., 564, certain property had been conveyed to plaintiff in a deed of trust. One Pescud, who owned an interest in the property as trustee, advertised the property, and plaintiff was present at the sale and bid upon it. The Court held that he was estopped to assert his claim to the title.

In *Biggs v. Brickell,* 68 N. C., 239, the Court held that one who is present at an execution sale and makes no objection cannot attack the validity of the sale. To same purport, *Flemming v. Barden,* 126 N. C., 450; *Governor v. Freeman,* 15 N. C., 472.

In *Bird v. Benton,* 13 N. C., 179, the Court held that where a sale or pledge of property by one who had no title thereto was made in the presence of the owner, without objection on his part, the latter is estopped to assert his better title.

In 16 Cyc., 764, the rule as deduced from the authorities is thus stated: "When a person having title to or an interest in property knowingly stands by and suffers it to be sold under a judgment or de-

cree, without asserting his title, or right, or making it known to the bidders, he cannot afterwards set up his claim. So, too, if he has knowledge of any irregularity in the proceedings, but permits the sale to be made without objection, he is estopped to contest its validity afterwards. . . . Where one who owns or has an interest in personal property with full knowledge of his rights suffers another to deal with it as his own by selling or pledging it, or otherwise disposing of it, he will be estopped to assert his title or right as against a third person who has acted on the faith of, and been misled by, his acquiescence."

A case exactly in point is *Rice v. Bunce* (Mo.), 8 Am. Rep., 129, where the defendant, who had an equitable interest in one-half of a lot of land, was present when the property was sold at auction, but gave no notice of his claim, and bid on the property. The Court held that he was "estopped from afterwards asserting his title against the purchaser." In 16 Cyc., 765, the same rule is thus stated: "If the owner of property, with knowledge of the fact, bids on it at a judicial sale without giving notice of his title, he will be estopped thereafter to assert his title or contest the validity of the sale, to the prejudice of one who has acted in reliance on his conduct and in ignorance of the facts."

The defendant Pate, purchaser at the sale, does not claim that he is an innocent purchaser, knowing nothing of the liens recorded against the property, but had full notice, for he was himself owner of all the outstanding liens. He should not be relieved of his bid for the property interest of the judgment debtor, which he took possession of and removed, merely because it has since been destroyed by fire.

BROWN, J., concurs in dissent.