LEO DANIELS, In re NORTH CAROLINA DEPARTMENT OF REVENUE, v. LEO DANIELS, t/a TERMINAL GRILL, v. H. PAUL YELVERTON.

(Filed 16 December, 1953.)

**1. Pleadings § 16—**

A defendant in a civil action may demur *ore tenus* at any time, in either the trial court or in the Supreme Court, upon the ground that the complaint does not state a cause of action, or the Supreme Court may take cognizance of such defect *ex mero motu*, since the failure to state a cause of action cannot be waived.

**2. Pleadings § 15—**

A demurrer admits the truth of the allegations of fact contained in the complaint and ordinarily relevant inferences of fact necessarily deducible therefrom, construing the complaint liberally, but the demurrer does not admit conclusions or inferences of law.

**3. Execution § 6: Taxation § 39—**

Where the Commissioner of Revenue has the clerk of a Superior Court to docket his certificate setting forth the tax due by a resident of the county pursuant to G.S. 105-242 (3), execution on such judgment directed to the sheriff of the county must be issued by the clerk of the Superior Court of the county, or in his name by a deputy or assistant clerk, and it cannot be issued by the Commissioner of Revenue, G.S. 1-307, G.S. 1-303.

**4. Execution § 23½ b—**

The issuance of a proper writ of execution is an essential step in the sale of property under execution, and when the execution is not issued by the clerk of the court in which the judgment is docketed, or in his name by a deputy or assistant clerk, as required by law, the sale is a nullity.

**5. Execution § 22—**

Plaintiff tax debtor instituted this action against the last and highest bidder at a sale under execution of a certificate issued by the Commissioner of Revenue pursuant to G.S. 105-242 (3), to recover for failure of the bidder to comply with his bid, but the complaint alleged that the execution was issued by the Commissioner of Revenue. *Held:* Upon the allegations the sale was a nullity, since an execution to be valid must be issued by the clerk of the county in which the judgment is docketed, and therefore the complaint fails to state a cause of action.

**6. Same: Estoppel § 5—**

A bidder at an execution sale which is void is not estopped to deny the validity of the sale, since in such instance the doctrine of estoppel does not apply.

7. **Execution § 23½a—**

Where. from the allegations of the judgment debtor relative to the debts outstanding against him it is apparent that he could not be entitled to any part of the amount bid by the last and highest bidder, such allegations preclude any inference that he would be entitled to any part of the bid had it been paid, and therefore he is not entitled to maintain an action against the bidder to enforce payment. This result is not affected by the provisions of G.S. 1-399.69 (d).

APPEAL by the plaintiff from *Hatch, Special J.,* June Civil Term 1953. WAKE. Affirmed.

Civil action heard on demurrer *ore tenus*. The demurrer was sustained, and the plaintiff excepted and appealed.

*Samuel Pretlow Winborne and Vaughan S. Winborne for plaintiff, appellant.*

*T. Lacy Williams for defendant, appellee.*

PARKER, J.   This is a summation of the allegations of the complaint. 1. The plaintiff was the defendant in an action entitled "North Carolina Department of Revenue v. Leo Daniels, trading as the Terminal Grill." 2. On or about 24 January 1950 an execution was issued by the North Carolina Department of Revenue to the Sheriff of Wake County, to levy on the property of Leo Daniels, trading as the Terminal Grill in Raleigh —the execution being issued upon a judgment properly recorded in Wake County in the Wake County Judgment Docket Book 56, p. 214, in favor of the Department of Revenue.   3. The Sheriff found no real property belonging to Daniels, but levied on personal property owned by him in the Terminal Grill.   4. On 18 February 1950 at noon, after proper advertisement according to law, a public sale was conducted by the Sheriff at the Terminal Grill.   Before the bidding began the following terms and conditions for the sale were read: "The Sheriff's Office wants it very definitely understood by all bidders on this sale, that we are selling, by the order of the court, the interest or equity held by Leo Daniels in this property only.   Be it further understood that the sale of this property is subject to all mortgages and liens which the court may hold valid against this property.   The Sheriff's Office does not undertake nor try to decide who owns this property, nor can we make any decision as to who owns what.   Now the sale opens and I will receive bids.   Terms Cash." 5. The last and final bidder for the property was H. Paul Yelverton in the amount of $2,500.00.   6. On 20 February 1950 Yelverton notified the Sheriff of Wake County that he would not pay the amount of his bid, and still refuses to do so, though the Sheriff notified Yelverton in writing to make good his bid, and take title.   7. In accordance with law, and after

proper advertisement, the properties were resold at public sale on 14 March 1950, where and when the last and final bidder was H. Paul Yelverton in the amount of $25.00, which bid was paid to the Sheriff of Wake County, and Yelverton took title to the properties.  8. In accordance with G.S., Sec. 1-339.69 (c), a deficiency exists between the original sale price and the resale price in the amount of $2,475.00 and the cost of the resale, for which amounts the defendant Yelverton is liable.  Wherefore, the plaintiff prays that the defendant be required to pay into the Clerk's Office the sum of $2,475.00 and the cost of the resale, that he recover his costs, etc.

The defendant filed an answer.  The plaintiff filed a reply to certain paragraphs of the answer containing new allegations.  The parts of the reply material for this appeal follow.  One : The defendant knew of his own knowledge that a proper Notice of Sale of Personal Property under Execution was posted and published by the Sheriff of Wake County. Two : The plaintiff borrowed money from the Raleigh Industrial Bank; the defendant who was his landlord, endorsed his note; that he gave the defendant a chattel mortgage on his equipment and fixtures as security for his endorsement, which mortgage was of doubtful validity at the time of execution, and he still owed the bank at the time of the levy on the note. The plaintiff was and still is. indebted to other persons, some of whom have secured judgments and liens against him.  The defendant was aware of all these facts.  The plaintiff prior to the levy attempted to sell his business as a going concern and had a prospective purchaser; but could not sell, because the defendant would not lease the building to the prospective buyer; that the defendant knew he could not obtain a fair price for his business unless a lease was granted.  Three : The defendant knew he paid over $12,000.00 for his equipment and fixtures, which were appraised to have a fair market value of over $6,000.00 where placed, and over $3,500.00, if they had to be removed.

A defendant in a civil action in North Carolina may demur *ore tenus* at any time, in either the trial court, or in the Supreme Court, upon the ground that the complaint does not state a cause of action.  If the question is not raised, we may do so *ex mero motu,* for the failure to state a cause of action cannot be waived.  *Lamm v. Crumpler,* 233 N.C. 717, 65 S.E. 2d 336; *Watson v. Lee County,* 224 N.C. 508, 31 S.E. 2d 535; *Snipes v. Monds,* 190 N.C. 190, 129 S.E. 413.  "If the cause of action, as stated by the plaintiff, is inherently bad, why permit him to proceed further in the case, for if he proves everything that he alleges he must eventually fail in the action?"  *Garrison v. Williams,* 150 N.C. 674, 64 S.E. 783.

The plaintiff's pleadings must be liberally construed.  The demurrer *ore tenus* admits the truth of the allegations of facts therein contained

and ordinarily relevant inferences of fact necessarily deducible therefrom, but not admissions of conclusions or inferences of law. *Bryant v. Ice Co.,* 233 N.C. 266, 63 S.E. 2d 547; *Ferrell v. Worthington,* 226 N.C. 609, 39 S.E. 2d 812; *Alford v. Washington,* 238 N.C. p. 694.

The complaint alleges that on or about 24 January 1950 an execution was issued by the North Carolina Department of Revenue to the Sheriff of Wake County to levy on the property of Leo Daniels, trading as the Terminal Grill in Raleigh—the execution being issued upon a judgment properly recorded in Wake County in the Wake County Judgment Docket Book 56, p. 214, in favor of the North Carolina Department of Revenue. The necessary inference from this allegation is that the Commissioner of Revenue caused this judgment to be docketed with the Clerk of the Superior Court of Wake County, as provided for in G.S. 105-242, subsection 3. The plaintiff in his brief admits that the Commissioner of Revenue caused this judgment to be docketed with the Clerk of the Superior Court of Wake County as provided for in G.S. 105-242, subsection 3, and further admits that the Commissioner of Revenue issued an execution direct to the Sheriff of Wake County. The appellant contends in his brief "G.S. 105-242, subsection 3 states that when a judgment is docketed with the Clerk, 'Execution may issue thereon,' but no mandatory requirement is set forth. Therefore, an execution may issue from either source." The appellant cites no authority for this position.

The Commissioner of Revenue did not proceed under G.S. 105-242, subsection 1, by issuing an order under his hand and official seal, directed to the Sheriff of Wake County, commanding him to levy upon and sell the real and personal property of Leo Daniels found within his county for payment of the amount thereof, with added penalties, etc., and to return to the Commissioner of Revenue the money collected by virtue thereof.

Neither did the Commissioner of Revenue proceed under G.S. 105-242, subsection 2. That subsection states bank deposits, rents, salaries, wages and all other choses in action or property incapable of manual levy or delivery, hereinafter called the intangible, belonging, owing, or to become due to any taxpayer, or which has been transferred by such taxpayer under circumstances which would permit it to be levied upon if it were tangible, shall be subject to attachment or garnishment.

However, as alleged in the plaintiff's pleadings and admitted in his brief, the Commissioner of Revenue proceeded against this defendant under G.S. 105-242, subsection 3, the material part of which for the purposes of this appeal reads as follows: "In addition to the remedy herein provided, the Commissioner of Revenue is authorized and empowered to make a certificate setting forth the essential particulars relating to the said tax, including the amount thereof, the date when the same was due

DANIELS *v.* YELVERTON.

and payable, the person, firm, or corporation chargeable therewith, and the nature of the tax, and under his hand and seal transmit the same to the clerk of the superior court of any county in which the delinquent taxpayer resides or has property; whereupon, it shall be the duty of the clerk of the superior court of the county to docket the said certificate and index the same on the cross index of judgments, and execution may issue thereon with the same force and effect as an execution upon any other judgment of the superior court (said tax shall become a lien on realty only from the date of the docketing of such certificate in the office of the clerk of the superior court and on personalty only from the date of the levy on such personalty and upon the execution thereon no homestead or personal property exemption shall be allowed)."

G.S. 105-242, subsection 4 states that the remedies herein given are cumulative and in addition to all other remedies provided by law for the collection of taxes.

The question presented is this: When the Commissioner of Revenue pursuant to G.S. 105-242, subsection 3 has had the Clerk of the Superior Court of Wake County to docket his certificate setting forth the tax due by Leo Daniels trading as the Terminal Grill in the Wake County Judgment Docket Book 56, p. 214, can the Commissioner of Revenue issue a valid execution on said judgment direct to the Sheriff of Wake County, or must the execution on said judgment be issued by the Clerk of the Superior Court of Wake County? The answer is the execution must be issued by the Clerk, and that the Commissioner of Revenue himself cannot issue a valid execution on such judgment.

G.S. 1-307 provides that executions for the enforcement of judgments can issue only from the court in which the judgment for the enforcement of the execution was rendered, and the returns of executions shall be made to the court of the county from which it issued. *Hasty v. Simpson*, 77 N.C. 69. G.S. 1-303 provides that executions shall be signed by the clerk.

The general rule is that the issuance of a writ of execution is an essential step in the process by which title may be acquired at an execution sale, and that a writ of execution is issuable only out of the court which rendered the judgment. 21 Am. Jur., Executions, p. 29; 33 C.J.S., Executions, p. 188. The signature of the clerk is the testimonial by which the authenticity of the execution is to be known. "An officer making a sale under execution acts solely by virtue of the statutory authority conferred, which must be strictly pursued; and where such power does not exist nothing passes by the sale." 33 C.J.S., Executions, p. 434.

"The execution is issued by the clerk and subscribed by him, or in his name by a deputy, or by an assistant clerk, and is directed to the sheriff of the county to which it is issued . . ." McIntosh N. C. Practice and Procedure in Civil Cases, p. 832.

"An execution is a judicial writ issuing from the Court where the judgment is rendered, and in contemplation of law is issued under the order of the Court." *Gooch v. Gregory,* 65 N.C. 142.

In *Hooker v. Forbes,* 202 N.C. 364, p. 368, 162 S.E. 903, it is said: "It had previously been decided that a writ signed by an attorney under a verbal deputation of the clerk to all members of the bar was a nullity. *Shepherd v. Lane,* 13 N.C. 148; *Gardner v. Lane,* 14 N.C. 53."

Applying the principles of law above stated to the allegations of the plaintiff's pleadings it would seem that the execution issued by the North Carolina Department of Revenue to the Sheriff of Wake County upon a judgment in favor of the North Carolina Department of Revenue which was recorded in the Office of the Clerk of the Superior Court of Wake County in the Wake County Judgment Docket Book 56, p. 214, was a nullity, and conferred no power on the sheriff to sell, and Yelverton, the last and highest bidder at such purported sale, acquired no title; such purported sale being a nullity. "Nothing can come out of nothing, any more than a thing can go back to nothing." Marcus Aurelius Meditations IV, 4. The purported sale being a nullity, the plaintiff's pleadings totally fail to state a cause of action.

The plaintiff contends that the defendant is estopped to question the validity of the first sale. In 33 C.J.S., Executions, p. 485, it is said: "A chattel mortgagee, who bids in the equity of redemption at an execution sale, is not estopped to deny the validity of such sale, especially where the sale is void"—citing in support of the text *Rowland Hardware & Supply Co. v. Lewis,* 173 N.C. 290, 92 S.E. 13, wherein it is said "the sale being void, the doctrine of estoppel does not apply."

A further serious question is presented: Can the plaintiff maintain this action as alleged in plaintiff's pleadings? The answer is No. The Commissioner of Revenue did not bring this action, and is not a party to it. The Sheriff of Wake County did not bring this action, and is not a party to it. We have held that a sheriff selling land under execution may maintain an action in his name against the purchaser for the amount bid. *McKee v. Lineberger,* 69 N.C. 217; *Maynard v. Moore,* 76 N.C. 158; *Woodruff v. Trust Co.,* 173 N.C. 546, 92 S.E. 496. In *Rowland Hardware & Supply Co. v. Lewis, supra,* the action was brought by a judgment creditor against the Sheriff of Robeson County, C. T. Pate & Co., and C. T. Pate to recover the amount bid by C. T. Pate, acting for the firm of which he was a member, at a sale under execution.

In 21 Am. Jur., Executions, p. 121, it is said: "An action for breach of contract based upon a failure of the successful bidder at an execution sale to pay the bid may, as a rule, be maintained by the execution officer in his own name. It has been held that the plaintiff in execution, also, may sue and, furthermore, that the judgment debtor may maintain a suit

against the purchaser at execution sale to recover the excess of the bid over the amount of the judgment upon the neglect or refusal of the officer to bring the suit." 33 C.J.S., Executions, Sec. 222, p. 471, states: "However, if the amount bid is less than the amount of the debt, so that the execution debtor is entitled to no part of the price, the execution debtor clearly is not entitled to bring an action to enforce the bid, and the action is properly brought by the sheriff."

No inference can be drawn from the plaintiff's pleadings that if the bid at the first sale had been paid that the plaintiff would be entitled to any part of the bid paid, because the plaintiff alleges in his reply that he borrowed money from the Raleigh Industrial Bank, that the defendant endorsed this note, that he had given the defendant a chattel mortgage on his equipment and fixtures as security for his enforcement, which mortgage was of doubtful validity at the time of this execution, and that he owed the bank at the time of levy on this note; and further that he was, and still is, indebted to other persons and firms, some of whom have procured judgments and liens against him.

We are advertent to G.S. 1-339.69 (d). However, it would seem that this subsection would not permit the plaintiff to maintain this action according to the facts alleged in the plaintiff's pleadings.

Can it be said that plaintiff's pleadings allege a cause of action, when according to the pleadings the plaintiff cannot maintain the action?

The trial court was correct in sustaining the demurrer *ore tenus,* and it is so ordered.

Affirmed.